### UNITED STATES v. KELIH.

(District Court, S. D. Illinois, S. D.    March 21, 1921.)

No. 16469.

1. **Searches and seizures ⊝⟶3—Warrant void, when not based on oath or affirmation.**

   A search warrant was void, if issued without an oath or affirmation, as required by Const. Amend. 4.

2. **Intoxicating liquors ⊝⟶248—Affidavit for search warrant, stating merely ultimate fact that law had been violated, held insufficient.**

   An affidavit for a search warrant, alleging that a violation of the National Prohibition Act had been committed, and that affiant had reason to believe there were illegally manufactured liquors and an illicit still concealed on certain premises, was insufficient, as the witness attempted to find the ultimate fact that a violation of the law had been committed, and stated nothing warranting the judicial officer issuing the warrant in finding such fact.

3. **Searches and seizures ⊝⟶3—Affidavit for search warrant must state facts justifying legal conclusion.**

   Under Const. Amend. 4, a search warrant should not be issued, unless the judge has been furnished with facts under oath which, when the law is properly applied to them, tend to establish the necessary legal conclusions, or facts which, when the law is properly applied to them, tend to establish probable cause for belief that the legal conclusion is right.

4. **Searches and seizures ⊝⟶3—Finding of probable cause is judicial function, and cannot be delegated.**

   Under Const. Amend. 4, providing that search warrants shall not be issued but upon probable cause, supported by oath or affirmation, the finding of probable cause from the exhibited facts or the legal conclusion justifying the warrant is a judicial function, and cannot be delegated by the judge to the accuser.

5. **Searches and seizures ⊝⟶2—Congress may make limitations on issuance of warrants in addition to those in Constitution.**

   Congress may add further limitations on the issuance of search warrants, in addition to those contained in Const. Amend. 4, if it deems proper.

⊝⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Intoxicating liquors** 247—**Private residence not subject to search because still is found in operation.**

Under National Prohibition Act, tit. 2, § 25, providing that no search warrant shall issue to search any private dwelling unless used for the unlawful sale of intoxicating liquor, or used in part for some business purpose, such as a store, shop, saloon, restaurant, hotel, or boarding house, a private dwelling does not lose its character as such, and become a distillery, because a home-made still is found in operation upon a search.

7. **Criminal law** 393(2)—**Intoxicating liquors** 255—**Property used in manufacture and illegally seized will be ordered returned, and cannot be used in evidence.**

Under Const. Amends. 4, 5, property used in the manufacture of intoxicating liquor and seized upon an unlawful search of a private dwelling will be ordered returned, though the Volstead Act provides that there shall be no property rights in illicit liquors or apparatus for their manufacture, since to permit the government to retain possession of such property and use it on the trial would be, in effect, to require a defendant to be a witness against himself, contrary to Amendment 5.

8. **Criminal law** 395—**Property used in manufacturing liquor to be returned, and not used as evidence, though seized by revenue collectors.**

Under Const. Amend. 4 and Volstead Act, tit. 2, § 25, property used in the manufacture of intoxicating liquor and seized upon an illegal search of a private dwelling must be ordered returned, and not used in a pending criminal case, though two deputy collectors of internal revenue were members of the searching party and observed odors incident to the distillation process, whether or not the situation would be different in a civil proceeding.

9. **Searches and seizures** 8—**Waiver of constitutional rights must appear by clear and positive testimony.**

Before a person can be held to have waived his constitutional right of immunity from illegal searches and seizures, the court must be able to find that the waiver is sustained by clear and positive testimony.

10. **Searches and seizures** 8—**Evidence insufficient to show person whose home was searched waived constitutional rights.**

Evidence *held* insufficient to show that one whose private dwelling was illegally searched for evidence of a violation of of the National Prohibition Act waived his constitutional rights by inviting the government officers to make the search.

Joe Kelih was indicted for violation of the National Prohibition Act. On motion by defendant for the restoration of property as illegally and unlawfully seized. Motion allowed.

Edward C. Knotts, U. S. Atty., and Clark B. Montgomery, Asst. U. S. Atty., both of Springfield, Ill.

James M. Bandy, of Granite City, Ill., for defendant.

FITZHENRY, District Judge. Defendant was indicted by the June (1920) grand jury. The indictment contains five counts, charging him with manufacturing spirituous liquor; having possession of liquor; having possession of and under his control an unregistered distilling apparatus; that he did unlawfully make and ferment a certain mash fit for distillation, in a building not a registered distillery; and that he had possession of property designed for use in the unlawful manufacture of liquor, in violation of the National Prohibition Act (41 Stat. 305), on the 18th day of March, 1920. The defendant pleaded

not guilty, and made his motion for the restoration of property, charging it was illegally and unlawfully seized by officers of the government, for the reason that the search warrant under which the search and seizure was made was void, as being in violation of the Fourth and Fifth Amendments to the Constitution of the United States, in that it was issued to search a private dwelling, in violation of the provisions of title 2, § 25, of the National Prohibition Act, and for the reason that the evidence upon which the government procured the indictment and seeks a conviction was gained by reason of the unlawful and illegal search. The government denied the facts upon which the motion was based. The court heard the evidence without the intervention of the jury.

The evidence disclosed that a number of officers under the direction of M. T. Kiggins, prohibition group chief for the then East St. Louis district, armed with a search warrant, went to the private dwelling of the defendant, on the 18th day of March, searched his premises, and took therefrom one milk can, 12 gallons of distilled whisky, one copper coil, and 3 gallons of raisin mash. The group chief was accompanied by five officers, some of whom were prohibition officers, two being deputy collectors of internal revenue, one a deputy sheriff, and a constable. They went to his home about 3 o'clock in the afternoon. The defendant was sitting at a table when Mr. Kiggins appeared at the door. Defendant testified that Mr. Kiggins said he was a government officer, was going to search the premises, showed his badge of authority, pushed the defendant aside, and said, "Come on to the basement;" while Mr. Kiggins testified that he had a search warrant issued by a justice of the peace of Madison county, that he read the most of the warrant to the defendant, except the fine print, and then proceeded to search the house. While Mr. Kiggins was getting in the door, other officers went into the basement, where they found defendant's wife, who protested against their entrance. She was informed that they were government officers, going to search the premises, and they did so, procuring the articles the return of which is sought by the motion.

The officers found a small still in operation in the basement, being operated by defendant's wife, who gave the officers a taste of her product. Defendant said the search and seizure were made without his consent and against his will, and was firm in his testimony that no search warrant was produced, and denies that he was told by anybody that the officers had a search warrant, or a warrant for his arrest. It was admitted by the government that the evidence and the information gained by reason of this raid was the evidence upon which the government expected to ask for defendant's conviction, except the evidence of the internal revenue chemist as to the alcoholic content of the liquor taken.

The search warrant was issued by Charles Sowell, and recites that "a violation of the National Prohibition Act has been committed, and that an illicit still is in operation and is now concealed in the premises of Joe Kelich at 1735 Walnut street in the town of Granite City, in said county," etc., and was issued to N. F. Kiggins. After the taking

of the evidence and at the conclusion of the arguments, an affidavit for a search warrant was produced by the government, and the court informed that the search warrant in question was issued upon this affidavit, which was not denied by the defendant. The affidavit is that of M. T. Kiggins, under date of March 15, 1920, and recites:

"A violation of the National Prohibition Act has been committed, and affiant further states that he has reason to believe that there are illegally manufactured liquors and an illicit still are now concealed in or on the premises at 1735 Walnut street in Granite City and now occupied by Joe Kelich. This affidavit is made to obtain a search for said stolen goods."

Two of the members of Mr. Kiggins' party were deputy collectors of internal revenue, and testified that when they arrived upon the premises they noticed the odor of the still in operation. Kelih is a laboring man, a Crotian, and does not talk the English language fluently or understand it readily. The house is a small house with a basement under it, and the premises had been their private dwelling for a number of years.

On behalf of the government it is not seriously contended that the search warrant is valid, but it is claimed the defendant has waived his constitutional right by inviting the prohibition officer, Kiggins, and his party into his home and permitting them to search and seize the property in question without objection; that there being two deputy collectors of internal revenue in the party, and, having reason to believe a still was in operation by the odors that they observed when they arrived on the premises, that therefore they had a right to search the premises and seize the property without a search warrant; and upon the theory that the mere fact that an illegal still was in operation in the cellar of the building changed the character of the premises from a dwelling to a distillery.

Important constitutional rights are involved in this case. The experiences of the people of Massachusetts, which resulted in section 14 of the Declaration of Rights 10 years before the Revolution, prohibiting general warrants and the exercise by the government of the power to search places or seize persons, with no specific charge and without a sworn warrant specifying an offense, the persons to be seized, and the objects of the seizure, which said declaration of principles also found lodgment in the Bill of Rights of Virginia, § 10, found crystallization in the Fourth Amendment to the Constitution. This case was largely argued upon the theory that the warrant in question was issued without any oath or affirmation as a basis, but was finally submitted to the court upon the theory that the affidavit above quoted was the basis upon which the warrant was issued.

The language of the Fourth Amendment to the federal Constitution discloses that the purpose of that amendment was to cover the contingencies and the guaranty, the security that was guaranteed to the people by both the Massachusetts and Virginia Bills of Rights, although stated in more apt language:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirma-

tion, and particularly describing the place to be searched, and the persons and things to be seized."

At the time of the submission of the Fourth Amendment, Congress submitted the Fifth, which must be considered and applied in connection with the Fourth. The portion of the Fifth Amendment which is pertinent here is:

"No person * * * shall be compelled in any criminal case to be a witness against himself."

[1, 2] If the warrant in this case was issued without an oath or affirmation, as required by the Constitution, of course it was void. If it was issued on the showing made by the affidavit of Mr. Kiggins that "a violation of the National Prohibition Act has been committed, and affiant further states that he has reason to believe that there are illegally manufactured liquors and an illicit still are now concealed in or on the premises," etc., is insufficient of itself to warrant the judicial officer to find that a violation of the National Prohibition Act has been in fact committed. The witness attempts to find the ultimate fact, which must be ascertained by the officer authorizing the issuance of the warrant. In fact, there is no evidence that a crime has been committed, beyond the mere conclusion of Mr. Kiggins.

[3, 4] No search warrant shall be issued unless the judge has first been furnished with facts under oath—not suspicions, beliefs, or surmises, but facts—which, when the law is properly applied to them, tend to establish the necessary legal conclusions, or facts which, when the law is properly applied to them, tend to establish probable cause for belief that the legal conclusion is right. The inviolability of the accused's home is to be determined by the facts, not by rumor, suspicion, or guesswork. If the facts afford the legal basis for the search warrant, the accused must take the consequences. But equally there must be consequences for the accuser to face. If the sworn accusation is based on fiction, the accuser must take the chance of punishment for perjury. Hence the necessity of a sworn statement of facts, because one cannot be convicted of perjury for having a belief, though the belief be utterly unfounded in fact and law. The finding of the legal conclusion or of probable cause from the exhibited facts is a judicial function, and it cannot be delegated by the judge to the accuser. Veeder v. United States, 252 Fed. 414–418, 164 C. C. A. 338 (Cir. Ct. of Appeals, 7th Cir.).

In discussing the Fourth Amendment the Supreme Court of the United States recently said:

"This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures * * * finds no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." Weeks v. United States, 232 U. S. 392, 34 Sup. Ct. 344, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177.

To permit the government to use the evidence gained upon this search in the prosecution of the present criminal case would be to compel defendant to give evidence against himself within the meaning of the Fifth Amendment to the Constitution. The United States Supreme Court, in an opinion handed down on February 28, 1921, in the case of Felix Gouled v. United States, 255 U. S. ——, 41 Sup. Ct. 261, 65 L. Ed. ——, elaborately discusses the rights of the people guaranteed to them by the Fourth Amendment and that portion of the Fifth Amendment above quoted. In its opinion, written by Mr. Justice Clarke, the court said:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, in Weeks v. United States, 232 U. S. 83, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right, to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'general depreciation' of the rights secured by them, by imperceptible practice of courts or well-intentioned, but mistakenly overzealous, executive officers."

[5] By the Fourth Amendment to the Constitution the people declared the limit beyond which Congress was not to go in authorizing search warrants. Veeder v. United States, supra. But, of course, Congress has the power to add further limitations upon the issuance of search warrants if it deems proper. By the passage of the National Prohibition Act, Congress has seen fit to add a further limitation to the issuance of search warrants in liquor cases, where it provided:

"No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house." National Prohibition Act, tit. 2, § 25.

[6] The defendant in this case has resided in the premises in question for some time. There was nothing in the evidence to show that the premises were used as anything other than a private dwelling. In fact, the court finds that the premises in question were the private dwelling of defendant and his family. It is not claimed that defendant's private dwelling was being used for the illegal sale of intoxicating liquor. Nor is it claimed that it was being used in part for any business purpose, such as a store, shop, saloon, restaurant, hotel, or boarding house. However, the contention is made that, because the evidence procured upon the unlawful search discloses a home-made still in operation, the premises ceased to be a private dwelling and became a distillery. It would be equally as sound to contend that

if defendant had had a sausage mill in his kitchen, which his wife used occasionally, that would change the character of the dwelling to that of a packing house. If section 25, supra, had used the words "unless it is being used for the unlawful sale OR MANUFACTURE of intoxicating liquor," a different situation would arise; but the statute does not use the capitalized words, and limits the business purpose to such as a "store, shop, saloon, restaurant, hotel, or boarding house." And there is now and was then no evidence to support the contention that the premises were used in part for any of the specific excepted purposes set out in the statute. The court is of the opinion that the search warrant was void; that the search made under it was illegal and unlawful.

[7] It is further contended, because the Volstead Act provides that there shall be no property rights in illicit liquors, or apparatus for their manufacture, that therefore the property in question does not come within the Fourth and Fifth Amendments. The reason for a return of property in all cases of this character is not based upon property rights so much as the personal security afforded by the Fifth Amendment, which relieves a man from being compelled to be a witness against himself in a criminal case. To permit the government in this case to retain possession of the property described in the motion, and use it in the trial of the case before the jury, would be in legal effect to require this defendant to be a witness against himself in a criminal case, which is clearly prohibited by the Constitution.

[8] The further contention is made that, because there were two deputy collectors of internal revenue in Group Chief Kiggins' raiding party, when they reached the premises in question and observed the odors incident to the distillation process, therefore they had a right to seize and destroy the apparatus, and that by virtue of their powers the property in question might be used in the pending criminal case against the defendant. The Fourth Amendment and the twenty-fifth section of the Volstead Act make no exceptions of deputy collectors of internal revenue. If this were a civil proceeding by the government to collect a tax, a different situation might arise, but one which is entitled to no consideration here.

The contention of the government that the defendant in this case waived his constitutional rights of freedom from search by inviting the government officers into his home is also presented. It is clear from the evidence of Mr. Kiggins, the officer in charge of this raid, that he thought he had a lawful search warrant, and his testimony tends to support the conclusion that he thought he was doing his duty by warrant of law and not by invitation; while the defendant testified through an interpreter that he attempted to stop Mr. Kiggins, but that the latter said he was a government officer, showed his badge, and pushed him aside.

[9, 10] Before a court can hold that a person has waived any of his fundamental constitutional rights, the court must be able to find that the contention of a waiver is sustained by clear and positive tes-

timony. There is no clear and positive testimony that the defendant in this case waived his rights under the law.

The motion to return the property will be allowed; and it is so ordered.