# UNITED STATES OF AMERICA
## *v.*
# ULISES MARTINEZ AND CANDIDO MARTINEZ.

San Juan, Criminal, No. 1992.

PROHIBITION.

**Prohibition Law—Violation in Officer's Presence—No Warrant.**
  Where an official of the law discovers a violation of the national prohibitory law in his own presence, he may proceed to make a search and seizure or arrest without a warrant.

Opinion filed June 14, 1922.

---

NOTE.—On admissibility in evidence against defendant of documents or articles taken from him, see notes in 59 L.R.A. 466; 8 L.R.A.(N.S.) 762; 34 L.R.A.(N.S.) 58; L.R.A.1915B, 834; L.R.A.1916E, 715.

On admissibility of evidence obtained by illegal search and seizure, see notes in 24 A.L.R. 1408; 32 A.L.R. 408.

United States v. Martinez.

ODLIN, Judge, delivered the following opinion:

On February 17, 1922, soon after the proceedings were instituted against the two defendants above named, there was filed a petition on behalf of the defendant Ulises Martinez, in which he claimed that certain personal property owned by him had been unlawfully seized from his home in Caguas, Porto Rico, on or about August 15, 1921, and he prayed for the return of the same. The property described in said petition is as follows, to wit:

"One memorandum or account book with heavy board cover, covered with gray cloth, containing about 150 pages, used in part as an account book of sales of a drug store and other accounts, as nearly as petitioner can describe same.

"One scratch pad containing notes of sales and transactions, as nearly as petitioner can describe same, and other books and papers which petitioner cannot accurately describe.

"Thirty-three 5-gallon tins of alcohol, bottles, corks, caps, labels, essences, mortars, measuring glass funnels, wrapping paper, 77 packages, each containing 12 pint bottles of rum, 5 packages, each containing 12 quart bottles of brandy Labin, 12 packages, each containing 12 quart bottles of Camaguey rum, 16 packages, each containing 12 quart bottles of white wine, and 10 quart bottles of white wine; 4 packages, each containing 12 pint bottles of Anisette, 20 quart bottles of Holland gin, 10 quart bottles of Camaguey rum, 1 bottle of Hennesay brandy, 24 pint bottles of rum, 15 pint bottles of orange liquor, 4 barrels, each containing 50 gallons of rum, 10 bottles of brandy Renaud, and other books, papers, and property which your petitioner cannot remember, all of which was and is his private property."

United States v. Martinez.

Numerous witnesses testified in behalf of the United States and others on behalf of the petitioner before the court at San Juan, and at the close of this testimony it was agreed by the district attorney and by counsel for the petitioner that the court could not obtain an accurate idea of the premises at Caguas without a personal inspection and visit; whereupon it was agreed that the hearing should be adjourned to Caguas with the right to present further evidence on behalf of the United States and also on behalf of the petitioner.  Therefore, on Monday, the 22d day of May, 1922, the Judge of this court with the district attorney and with counsel for the petitioner inspected the premises at Caguas, and also heard the testimony of various witnesses.  Later the matter was thoroughly argued and counsel for the petitioner has requested the court to embody in its ruling the finding of facts.  The court deems this request reasonable and proceeds to do so, finding the facts as follows:

1. The petitioner acquired at different times three contiguous lots in Caguas, one of which is on the corner of "E" street and another street, and there stands thereon a small building which is not now in active use, but which for several years was used by the petitioner as a manufactory of bay rum.  The middle lot has upon it what is called a garage, but which the court finds to be a combination of a garage and a repair shop for automobiles.  The remaining lot is covered by a residence building of two stories, and it is claimed that this last-named edifice was in August, 1921, used by the petitioner as a dwelling house *only* within the meaning of the national prohibitory law.

2. The so-called garage or repair shop came into use later than the other two buildings.  It is conceded that the petitioner never

United States v. Martinez.

took out any license permitting him to conduct a public garage. The court finds that the defendant made use of this middle building not only for the purpose of storing automobiles which were in use, but also for the purpose of repairing broken-down automobiles which the petitioner bought and put in order for the purpose of sale. It is also admitted that he owned a large truck which was used for the purpose of transporting goods to and from Caguas under a contract with a third party, the proceeds of the work to be shared between the two. When this so-called garage or repair shop was constructed, direct passage-way was provided from it to the so-called dwelling house, both on the first floor and there was a door in the upper part of the so-called dwelling house which opened into a sort of attic or shed extending out immediately under the roof of the garage or repair shop. There was also a small subterranean cavity or cellarette to which there was access from the garage or repair shop, but which was located under a portion of the so-called dwelling house.

3. It is admitted that a member of the Insular police force not in uniform and not located in Caguas, who had been led to believe that the petitioner was engaged in the unlawful sale of liquor, visted these premises on or about August 15, 1921, by making peaceable entry into the garage or repair shop, and that he went to the rear thereof and asked one of the employees for permission to use the toilet, which is at the rear of the so-called dwelling house. This policeman testified that he looked through an open place in the wall and saw a man in the act of filling a bottle with some kind of liquid, and that the man then placed the same under his shirt and started out of the so-called dwelling. Thereupon the policeman seized him, and, after some

struggle, grabbed the bottle which was broken and then **dropped** to the ground, the contents all being spilled. The policeman thereupon applied to the municipal judge of Caguas for a search warrant, and obtained a paper which was supposed to be a search warrant, but which it is conceded was null and void by reason of failure to describe the premises with accuracy. Armed with this void search warrant this policeman in connection with another policeman, who had been left to watch the premises, entered the so-called dwelling house and found an immense quantity of liquor estimated to be worth from four to five thousand dollars, part of which was in a room upstairs now used as a kitchen, but was not used as a kitchen in August, 1921, and part of which was found in the upper room which the petitioner claims was his private sleeping apartment, in which there was a small iron safe and a desk. At the time of the visit by the court on May 22, 1922, there were two beds in this upper room. Whether these beds were in this upper room in August, 1921, is a matter in dispute. A portion of the seized property, such as empty bottles, corks, caps, labels, measuring glass funnels, and wrapping paper, was found in the small subterranean cavity or cellarette above described.

4. The evidence of the young man who had the bottle which was seized by the policeman is to the effect that this bottle contained drinking water; but the policeman who seized the bottle just as it broke and fell to the ground swears positively that the bottle contained rum, because he could smell it distinctly. There were many witnesses for the petitioner who testified that they were in his employ in connection with the work on these old automobiles, that the water which came through the pipes in this repair shop or garage was not suitable to drink, and that it

United States v. Martinez.

was customary and permissible for the employees to walk through the passageway directly into the dwelling house and obtain their drinking water from the filter which the petitioner had therein for his own use.

5. The petitioner also testified that these liquors had been owned by him since the year 1919, before the national prohibitory law took effect, and they were what remained of a stock owned by him when he was formerly in the business of a druggist, and he insists, that, inasmuch as there was no valid search warrant, the entry into this building which he claims to be his private dwelling was a trespass and was illegal, and therefore all these various items of property must be returned to him.

6. It is conceded that at the time of the hearing in May, 1922, there was a sign at the entrance of this garage or repair shop prohibiting the public from entering except by permission. Whether or not there was such a sign there in August, 1921, is in dispute. The court is unable to find evidence satisfactory that such a sign was there at that time.

7. It is admitted that neither of the officers who took part in the seizure was in any way connected with the United States government. They were members of the Porto Rican or Insular police force and they had agreed to assist the Federal prohibition enforcement officer in connection with the work of the latter. It is also conceded that the first policeman, and the one who made the seizure of the bottle himself, believed that a search warrant was essential, because otherwise he would not have made an application for the same, but would have proceeded to make the search without a warrant.

8. From the evidence in the case it is impossible to say definitely, that, as between the young man who took the bottle of

liquor and the petitioner, the transaction was a gift, or a sale, or a theft. But it is not necessary for this court to pass definitely with respect thereto, because the young man, after placing the bottle within his shirt and starting from the inside of the house to the yard, did commit a violation of the law because he was actually transporting liquor. Therefore the policeman was right in his own determination that he had witnessed a violation of the law.

The court in passing upon the proper order to be made in relation to this petition is confronted with the difficult task of deciding whether the authorities relied upon by counsel for the petitioner are applicable to the peculiar circumstances of this case now under consideration, as well as the duty of the court to keep in mind that all the decisions relied upon by counsel for the petitioner, hereinafter referred to, were rendered by the courts previous to the enactment of the 18th Amendment and the Volstead Law. Of course, if the circumstances of this case bring it within the class of cases, one of which is that of Connelly v. United States, reported in 275 Fed. at page 509, the duty of the court is clear to grant the prayer of the petitioner. But in considering the proper order to make in this case the court must keep in mind one of the most recent utterances of Chief Justice Taft, who rendered the decision of the Supreme Court on May 15, 1922, in the case of the British Columbia Mills, Tug, & Barge Co. v. Mylroie [259 U. S. 1, 66 L. ed. 807, 42 Sup. Ct. Rep. 430]. This case did not involve the prohibitory law, but was a proceeding in *certiorari* to review a decision of the United States circuit court of appeals for the ninth circuit [268 Fed. 449] which had reversed a decree for the said British Columbia Mills, Tug, & Barge Company originally signed by the district

judge. The Chief Justice distinctly says that the reading of the record satisfies the Justices of the Supreme Court that the judge of the district court was influenced too much by the mere preponderance in number of the witnesses for Mylroie, and that he did not sufficiently consider the significance of certain conceded facts in sustaining the evidence of the fewer witnesses for the British Columbia Mills, Tug, & Barge Company. The applicability of that observation of the Chief Justice to the matter now submitted to this court is really quite pertinent, because if we take the various witnesses numerically it will be found that those for the petitioner vastly outnumber those called by the United States District Attorney. At the same time this court is clearly of the opinion that if six witnesses testify to a state of facts extremely improbable and lack the appearance of frankness and candor while on the witness stand, such testimony ought not to outweigh the evidence given by one single witness with whose good faith and truth the court is impressed.

Of course, if this case comes within the rule laid down in the famous case of Boyd v. United States, 116 U. S. 616, 29 L. ed. 746, 6 Sup. Ct. Rep. 524, or in the case of Weeks v. United States, 232 U. S. 383, 58 L. ed. 652, L.R.A.1915B, 834, 34 Sup. Ct. Rep. 341, Ann. Cas. 1915C, 1177, which latter decision followed and extended the doctrine laid down in the Boyd Case, and wherein it was conceded that a United States marshal without a search warrant had entered the private dwelling of Weeks and had seized his papers, which afterwards were sought to be used in incriminating Weeks and the proceedings were held void, then of course it would be the duty of this court to grant the prayer of the present petitioner. In the Boyd Case and in the Weeks Case the Supreme Court of the United States dis-

United States v. Martinez.

tinctly held that the Federal officer had acted without sanction of law and that, although he was prompted by his wish to bring proof to the aid of the government, and acted in good faith under color of his office, he was actually undertaking to make a seizure of private papers in direct violation of the constitutional provisions against such action; hence the restoration of these private papers was ordered in both the Boyd Case and the Weeks Case.

Now passing to the Connelly Case above mentioned, it seems there that prohibition agents observed a man by the name of Cameron coming out of the private dwelling of Connelly, and these prohibition agents questioned and searched Cameron and they were told by Cameron that Connelly had sold him some liquor. Furthermore, these agents had been secreted across the street from the house of Connelly and had seen Cameron enter the house and shortly thereafter leave the same. Thereupon these prohibition agents at once entered the dwelling of Connelly and seized certain liquors. Judge Cooper of the United States district court, northern district of New York, ordered the return of these liquors. He distinctly held that mere possession of intoxicating liquors in a private dwelling house, if acquired before the date when the Volstead Act took effect, is not unlawful.

Counsel for the petitioner has also argued with great force that the subsequent cases in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 64 L. ed 319, 24 A.L.R. 1426, 40 Sup. Ct. Rep. 182; and Gouled v. United States, 255 U. S. 298, 65 L. ed. 647, 41 Sup. Ct. Rep. 261; and United States v. Kelih, 272 Fed. 484; United States v. Slusser, 270 Fed. 818, are rulings which should operate as precedents controlling this court, or

at least guiding this court, in reaching a decision in this present matter.

My attention has been called to a decision of the United States circuit court of appeals for the fourth circuit, rendered November 1, 1921, in the case of Elrod v. Moss, reported in 278 Fed. 123. This was an action for damages for the illegal arrest and imprisonment of the plaintiff and for the illegal search of his automobile. The verdict was for the defendant. This judgment was affirmed. The court distinctly holds that arrest without warrant may be made where a person is detected in the act of violating the liquor laws, and that state statutes which permit arrests under such circumstances are not subject to any constitutional objection. The court not only upholds the state statutes of South Carolina just mentioned, but also distinctly decides that under the Volstead Act, title 2, § 26, a Federal prohibition officer may make a search and seizure or arrest without a warrant where he has direct personal knowledge of a violation of that law, whether such personal knowledge is derived through his hearing, his sight, or any other of his senses. The attention of this court has also been called to a decision rendered recently by United States District Judge Clayton of Alabama sitting in Florida, which case is entitled United States v. Alexander, reported in 278 Fed. 308. In this case Judge Clayton distinctly held that the search warrant which the officer had was void, but that illicit goods seized thereunder would not be returned; the court ordered the same destroyed.

This court is obliged to disregard the testimony of the employee of the petitioner to the effect that such employee was placing drinking water in the bottle which the policeman afterwards seized and which bottle in the struggle fell to the ground and was

broken. If the employee of the petitioner was actually obtaining drinking water in a bottle there was no reason why he should try to conceal the same under his shirt. This court is obliged to believe the testimony of the policeman that the contents of that bottle were rum or intoxicating liquor of some kind.

But that which is most important in deciding this case, as it seems to the court, is the true construction to be placed upon the word "only," in § 33 of the Volstead Act. The provision which this court is now called upon to construe is as follows: "It shall not be unlawful to possess liquors in one's private dwelling when the same is occupied and used by him as his dwelling only, and such liquor need not be reported," etc. It thus seems clear that if the property of the petitioner, where this liquor was found, was used by him as his dwelling *only*, the prayer of the petition should be granted; otherwise, the prayer of the petition should not be granted. Mr. Martinez himself testified that all the liquor in this so-called dwelling house only had been there since the year 1919. It is impossible for this court to believe that statement. Part of the liquor seized comprised 33 tins of alcohol, containing 5 gallons each. It is impossible for this court to believe that a man could for the space of three years retain alcohol in tin cans. This court is convinced that all or nearly all of the tins would leak, and the alcohol would be lost long before the expiration of three years. Furthermore, this court believes it entirely reasonable that a citizen might retain for his own use 12 bottles of brandy, and 20 bottles of Holland gin, 10 bottles of Camaguey rum, and it is possible that a private citizen might honestly have in his dwelling 4 barrels, each containing 50 gallons of rum, and that all this last described liquor might be conserved by the peti-

United States v. Martinez.

tioner for his personal legitimate use; but this court cannot believe that a citizen would have in his *private dwelling only* 165 gallons of alcohol. Therefore, this court is obliged to disregard the testimony of the petitioner.

The peculiar nature of the premises at Caguas, examined by the court on May 21, convinces the court that the so-called dwelling was not used by the petitioner as a private dwelling only. This court believes that the so-called private dwelling was an appurtenant to the garage or repair shop, and the court, while it admits that this garage or repair shop was not public in the sense that the public had a right to go there and employ the petitioner in making repairs upon automobiles in which the petitioner himself was not interested, still the fact remains that the petitioner himself testified that he was in the business of buying old automobiles and patching them up and reselling them; therefore, it is clear that if a person had an old automobile to sell he was virtually invited by the petitioner to carry this old automobile to his garage or repair shop and negotiate with the petitioner.

In conclusion, the court, after giving this case careful thought, is satisfied that the correct order to be made is that the books and business papers referred to in the petition should be returned to the petitioner, but that all the liquor and the labels, bottles, corks, caps, essences, mortars, measuring glass funnels, wrapping paper, and other articles evidently directly connected with the liquor business should not be returned.

It is further ordered that the petitioner pay the costs of this proceeding.

It is so ordered.