### UNITED STATES v. NOBRIGA et al.

District Court, D. Rhode Island. April 2, 1927.

No. 2989.

**1. Intoxicating liquors ⊗⟶249—Provision of Prohibition Act that search warrant shall not issue to search private dwelling is limited to officers under that act (National Prohibition Act, tit. 2, § 25 [Comp. St. § 10138½m]).**

The provision of National Prohibition Act, tit. 2, § 25 (Comp. St. § 10138½m), prohibiting issuance of a search warrant to search a private dwelling, is limited to searches for evidence of violation of that act, and has no application where the charge is violation of internal revenue laws, or other criminal statutes.

**2. Intoxicating liquors ⊗⟶249—Search warrant for search of cellar under private dwelling used for operation of commercial stills held valid (National Prohibition Act, tit. 2, § 25 [Comp. St. § 10138½m]).**

In the provision of National Prohibition Act, tit. 2, § 25 (Comp. St. § 10138½m), that no search warrant shall issue for search of a dwelling house, "unless it is in part used for some business purpose, such as a store, shop, saloon, restaurant, hotel or boarding house," the words of the exception are illustrative, and not exclusive, and the provision does not invalidate a warrant for search of the cellar under a dwelling house, not used in connection with the dwelling, but solely as a place for operating stills, for commercial purposes.

Criminal prosecution by the United States against Peter Nobriga and Tony Vieara. On motion to quash search warrant and suppress evidence. Denied.

John S. Murdock, U. S. Atty., and Joseph E. Fitzpatrick, Asst. U. S. Atty., both of Providence, R. I.

William W. Blodgett, of Pawtucket, R. I., for defendants.

MORRIS, District Judge. On March 11, 1927, the federal grand jury returned an indictment against Nobriga and Vieara, in six counts, for violation of the internal revenue law.

The first count charged the defendants with failure to register a still set up in violation of R. S. § 3258 (Comp. St. § 5994).

The second count charged the defendants with carrying on the business of a distillery without giving bond as required by R. S. § 3281 (Comp. St. § 6021).

The third count charged the defendants with working in a distillery, upon which no sign bearing the words "Registered Distillery" was placed, in violation of R. S. § 3279 (Comp. St. § 6019).

The fourth count charged the defendants with carrying on the business of distillers with attempt to defraud the United States, in violation of R. S. § 3297 (Comp. St. § 6066).

The fifth count charged the defendants with a violation of section 701 of title 7 of the Revenue Act of 1926 (44 Stat. 95), in that they were carrying on the business of distillers without paying the special tax provided therein.

The sixth count charged the defendants with distilling from mash, in violation of R. S. § 3282 (Comp. St. § 6022).

The defendants were set for trial, but, before the jury was impaneled, defendants' counsel made a motion to quash the search warrant and to suppress all evidence obtained thereunder, upon the ground that the search warrant had been improvidently issued upon an insufficient affidavit.

Defendants' motions were overruled and the trial proceeded, the court reserving the privilege of stating more fully the reasons for denying the motions in a rescript to be filed at some later date.

The jury returned a verdict of guilty against Nobriga upon counts 1, 2, 4, 5, and 6, and against Vieara on count 3.

Exceptions were seasonably *taken to all evidence offered by the government,* which had been *obtained by the search and seizure.*

The search warrant was issued December 20, 1926, by a United States commissioner, upon the affidavit of James J. Walsh, a federal prohibition agent.

The affidavit is as follows:

"I, James J. Walsh, federal prohibition agent, and the above-named complainant, on oath depose and say that on the 18th day of December, 1926, I made a personal visit to the cellar of tenement house, painted dark color and having number 1255 on upper part of porch, porch being on southerly end of house on Broad street, Central Falls, Rhode Island, mentioned in the foregoing application for search warrant, when I saw a still in operation and smelled odor of fermenting mash."

The search warrant authorized a search in the daytime of premises described as follows:

"Cellar of tenement house, painted dark color and having number 1255 on upper part of porch, porch being on southerly end of house on Broad street, in the city of Central Falls, in the state of Rhode Island."

The application and search warrant allege a violation of the National Prohibition Act (Comp. St. § 10138¼ et seq.). It was served by a federal prohibition agent, who

made return that on the 21st day of December, 1926, he searched the premises described and found and seized the following:

"2 50-gal. stills complete.

"2 6-burner gas stoves.

"2 10-gal. boilers.

"1 funnel.

"6 100-lb. bags corn sugar.

"1 hydrometer.

"4 5-gal. cans full of moonshine.

"1 5-gal. can about one-third full of moonshine."

The evidence disclosed that the agents, in making the search, entered the cellar or basement from the outside, without going through any part of the building used for living quarters; that they found two 50-gallon stills in operation, with the two defendants in charge of them; that the cellar contained no articles of household use, such as are ordinarily kept in a family cellar; that the cellar was wet and filthy, and permeated with the odors of fermenting mash. There was no cellar floor, and the bottom was very muddy, and boards were laid down to walk upon.

The only entry of any portion of the building occupied as living quarters was when one of the agents asked Nobriga for a bottle in which to take a sample of the drippings from the coil of one of the stills. The agent accompanied Nobriga upstairs to his tenement to get a bottle. No search was made of any part of the building, except the cellar. No evidence was introduced by the defendants to rebut the evidence adduced on behalf of the government.

A popular impression appears to exist that, so long as a dwelling house is not used as a place for the sale of intoxicants, section 25, tit. 2, of the National Prohibition Act (Comp. St. § 10138½m) provides absolute immunity from a search and seizure. Acting upon this popular belief, members of the bootleg fraternity are taking advantage of section 25 to convert rooms in their homes into distilleries. It is claimed that, so long as their finished product is transported to and sold from some outside place, no search warrant can be legally issued to interrupt their business, and, perchance their criminality is discovered and their business is interrupted by federal officials acting under the authority of a search warrant, then a cry goes up that their constitutional rights under the provisions of the Fourth Amendment of the federal Constitution have been violated, and under the Fifth Amendment all evidence so illegally obtained must be suppressed.

Such is the defense, and the only defense, in the case at bar.

The Constitution furnishes security against an unreasonable search, whether it be of one's "castle," his barn, or his automobile.

There has been no suggestion that section 25 of the National Prohibition Act was inserted therein because the Fourth Amendment had been found inadequate for the protection of the home. Section 25 should be read in connection with section 33, tit. 2 (Comp. St. § 10138½t), and I believe was inserted with special reference to the latter section, which provides that:

"It shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used."

Nothing in the language of section 33 can be construed to countenance the manufacture of liquor in one's home, certainly not in commercial quantities, as it would not then be legally acquired or used.

[1] Section 25 is a limitation upon the Espionage Act (40 Stat. 217), and I believe is applicable solely to offenses under the National Prohibition Act. The language used coupling search warrants for private dwellings with the unlawful sale of intoxicating liquor indicates that such was the true intent of the act.

No one would have the temerity to claim that, because the affidavit did not disclose a sale of intoxicating liquor therein, a warrant could not issue for a counterfeiting outfit set up in private dwelling, upon a proper application therefor. Yet, if section 25 is of general application governing searches of private dwellings, such would be its effect.

It may as well be said it has application to burglars' tools, or an opium den, as to stills. The traffic in intoxicating liquors under the National Prohibition Act constitutes one class of offenses; the manufacture of intoxicating liquors in violation of the revenue laws constitutes another class. Section 25, by words and context, belongs to the former, while warrants for discovering criminality and enforcement of the latter are controlled by the common-law search and

seizure, existent before the National Prohibition Act was ever dreamed of, as modified, if modified at all, by the Espionage Act.

[2] The language of section 25 reads:

"No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house."

It is argued that the words "store, shop, saloon, restaurant, hotel, or boarding house" are words having well-defined meanings and describe well-defined places, and that on the theory of "expressio unius est exclusio alterius," a still set up in a dwelling house does not put the dwelling house in a class "in part used for some business purpose."

It seems to me that the very statement of the proposition shows its fallacy. Certainly the distillation of intoxicants from mash has become a very lucrative business to those who are so fortunate as to escape detection. It is a business entirely disconnected and disassociated with the ordinary environments of a home. Distilleries in private dwellings are innovations, the product of nation-wide prohibition, far from essential to the tranquillity of the home. It is my opinion that the words of the statute, "store, shop, saloon, restaurant," etc., are illustrative and not exclusive.

While the words may not be interpreted to mean a distillery, the process of distilling is a "business," to which individuals have devoted a portion of their homes to an extent that it cannot be said they are exclusively used as private dwellings.

R. S. § 3266 (Comp. St. § 6004), provides that:

"No person shall use any still, boiler, or other vessel, for the purpose of distilling, in any dwelling house, or in any shed, yard, or inclosure connected with any dwelling house, or on board of any vessel or boat."

R. S. § 3282, as amended by section 5, Act of March 1, 1879 (Comp. St. § 6022), provides that:

"No mash, wort, or wash, fit for distillation or for the production of spirits or alcohol, shall be made or fermented in any building or on any premises other than a distillery duly authorized according to law."

These sections of the Revised Statutes existed long before the National Prohibition Act was passed, and, if violated, the only immunity from search and seizure was the Fourth Amendment. To impute to Congress an intent to change or modify the foregoing provisions of the revenue laws, or to put violations of them beyond the pale of the law, is, as said in one case, "to charge it with an intent to encourage the infant industry of family distilleries and to sanction the most pernicious evil of the day."

The object of the National Prohibition Act is declared in title 2, § 3 (Comp. St. § 10138½aa), to be enacted "to the end that the use of intoxicating liquor as a beverage may be prevented."

It would be strange indeed to impute to Congress an intent to insert in the same act a clause calculated to foster and encourage the very evil which it was trying to exterminate. Yet such is the effect of section 25 as it has been construed in some of the cases to which my attention has been called.

To hold that a still set up in one's kitchen or his bedroom, turning out its product in commercial quantities, is immune from seizure so long as no sale is made from the house, is straining section 25 beyond the breaking point, and I cannot bring my mind to a status which will permit me to so hold.

But I am asked to go further, and hold that a basement or cellar exclusively used as a brewery is immune from search because the family of the owner lives in a tenement in the same block.

In the case at bar we are dealing with something more than a family distillery. Two stills, of 50-gallon capacity, were found in operation, capable of an output of many gallons of moonshine per day.

If the application for a search warrant had recited a violation of R. S. § 3266, instead of a violation of the National Prohibition Act, I would have no hesitancy whatever in denying defendant's motion. But, assuming what appears to be the fact, that the search warrant was issued because the application therefor recites a violation of the National Prohibition Act, and that therefore section 25 is applicable, I think, even then, the motions should be denied, because the warrant was to search a cellar, no part of which was devoted to family use.

It is not uncommon to find many different lines of business carried on in the basement of city blocks, the upper stories of which are occupied by tenants. No greater reason appears why a store, saloon, or restaurant, located in the basement of a tenement house, should be the subject of a search, than a basement or cellar devoted to a distillery.

For the reason that I believe section 25 of the National Prohibition Act was never intended to prohibit the search of a dwelling

house wherein the distillation of intoxicants is being carried on, and for the further reason that the search was made of a cellar exclusively devoted to a distillery, the defendants' motions were denied.

The following is a list of cases bearing on one side and the other of the questions presented: In re Mobile (D. C.) 278 F. 949; Hurley v. United States (C. C. A.) 300 F. 75; United States v. Goodwin (D. C.) 1 F.(2d) 36; United States v. Apple (D. C.) 1 F.(2d) 493; United States v. Mitchell (D. C.) 12 F.(2d) 88; United States v. Kelih (D. C.) 272 F. 484; Jozwich v. United States (C. C. A.) 288 F. 831; Temperani v. United States (C. C. A.) 299 F. 365; Staker v. United States (C. C. A.) 5 F.(2d) 312; Monaghan v. United States (C. C. A.) 5 F.(2d) 424.