THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ALBERTO CAPRILES and RAMÓN RAMÍREZ SEGARRA, Defendants and Appellants.

No. 8582. Argued April 23, 1941.—Decided April 28, 1941.

*Andrés Ruiz, Jr.,* for the appellant Capriles. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for The People, appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Alberto Capriles Camacho and Ramón Ramírez Segarra were found guilty and sentenced by the Municipal Court of Mayagüez for a violation of Act No. 25 of July 17, 1935 (Special Session, p. 152) known as the *Bolita* or Boli-pool Act. They appealed to the district court and before the case

had been set for trial, they filed a motion in which, after alleging that certain evidence which the district attorney proposed to offer against them, consisting of cash, tickets, lists and other equipment for said game, had been illegally obtained by virtue of a search warrant which was null and void, they requested that said evidence be returned to them and that the court refuse to admit it if offered in evidence at the trial. The lower court denied the motion at a special hearing and then held the trial on a later date, admitting said evidence against the defendants' opposition and sentencing each one of them, after they had been found guilty, to pay a fine of $200 or spend four months in jail.

The defendants appealed separately to this Court but as the appeal taken by Ramírez has been dismissed for lack of prosecution, there only remains to be considered the one taken by Capriles, with which we are now concerned.

The appellant assigns five errors, among them that the evidence illegally obtained was admitted and that the evidence is insufficient to uphold the judgment appealed from.

As the prosecuting attorney of this Court raises in his brief a question of law which if it were upheld would simplify considerably the decision in this appeal, since it would not then be necessary to consider whether the evidence of which the defendant complains was wrongly admitted, we shall proceed to consider said question at the start.

██ According to the prosecuting attorney, the motion requesting the return of the evidence illegally obtained must be filed before the court which issued the search warrant. The prosecuting attorney summarizes his viewpoint as follows:

"Applying these provisions of law to the instant case (he refers to Section 517 and 518 of the Code of Criminal Procedure), concerning a violation of the *Bolita* Law (Act No. 25 of July 17, 1935), which is a misdemeanor originating in the municipal court, and the search warrant having been issued by the municipal judge, one must arrive at the conclusion that if the defendant Alberto Capriles believed that

the search warrant had been illegally issued, he should have taken the steps set out by Section 517 and 518, that is, he should have impeached or attacked said warrant as soon as it had been executed and returned, and in that same special proceeding prior to, and distinct from the principal case. After failing to do so, he cannot raise an objection and attack said warrant collaterally in the instant case which has been brought against him, nor can he offer any evidence concerning his motion of nullity, since said proceedings must be prosecuted just as the statute provides, the proper occasion to offer said evidence being the one set out by Section 517, that is, before the same judge who issued the order.'' (Brief, page 8.)

The prosecuting attorney cites the case of *Meegan* v. *Tracy,* 220 App. Div. 600, 223 N.Y.S. 355, as authority for the doctrine that the insufficiency of the sworn statement and other documents which motivated the search warrant cannot be attacked collaterally. Sections 517 and 518 of the Code of Criminal Procedure invoked by the prosecuting attorney read as follows:

''Section 517.—If the grounds on which the warrant was issued be controverted, he must proceed to take testimony in relation thereto, and the testimony of each witness must be reduced to writing.

''Section 518.—If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds in which the warrant was issued, the justice of the peace must cause it to be restored to the person from whom it was taken.''

It is convenient to make clear that although said Sections refer to the justice of the peace, the authority therein conferred to said public official must be held to apply to the municipal judges, since when the office of municipal judge was created, the Code of Criminal Procedure was already in force, and the jurisdiction which the justices of the peace had had was thereafter conferred upon the municipal judges.

The Sections cited by the prosecuting attorney do not compel a person who has been affected by the search warrant to resort at first to the municipal judge so that this official will order the return of the objects illegally seized. As

a matter of fact, the power to order the return of said objects, when an attempt is made to offer them in evidence against the defendant, exists in said official only in those cases where the offense, in connection with which the evidence could be used, comes within his jurisdiction, since, as Section 514 of the above mentioned Code provides:

".... If it was taken on a warrant issued on the grounds stated in the second and third subdivisions of section 502 *he must retain it in his possession, subject to the order of the court to which he is required to return the proceedings before him, or of any other court in which the offense in respect to which the property taken is triable.*" (Italics supplied.)

If the trial, as in this case, was to be held before the municipal judge who issued the search warrant, the defendants could request the judge to order the return of said objections before the trial was held. As they did not request this in time, they could not attack collaterally the validity of the search warrant within the trial *which was going to be held in said municipal court;* but this did not prevent the defendants, after the case had been appealed to the district court, where a trial *de novo* would be held, from attacking by means of a motion to that effect, filed before the day set for trial, the validity of the search warrant, and from requesting that the objects illegally seized should be returned to them and not be admitted in evidence. We must not forget that in the appeals to the district courts, from judgments rendered by the municipal and justice of the peace courts in criminal cases, the district court does not review, contrary to what it does in civil appeals from the municipal courts, the orders, decisions or decrees by which the appellant may believe himself to be aggrieved. Therefore, in regard to the right of the defendant to impeach in the district court the validity of the search warrant, it is immaterial that the question was not raised in the municipal court. What the decisions require in the Federal Courts, as well as in the vast majority of the States and in this same jurisdiction, is that

the motion be filed before the date set for the trial of the case, so that the proceedings shall not be interrupted in order to receive evidence and decide a collateral question. See the cases of *The People* v. *Cerecedo,* (1914) 21 P.R.R. 52 and 60 respectively; *People* v. *Lebrón,* (1934) 46 P.R.R. 569, and the more recent one of *People* v. *Santiago,* decided *per curiam* in 1939 and appearing at page 999 of volume 55 D.P.R. See likewise to this same effect the summary of the American decisions made in the annotations which appear in 24 A.L.R. 1048; 32 A.L.R. 408; 41 A.L.R. 1145; 52 A.L.R. 477, and 88 A.L.R. 348. The constant run of decisions in the Supreme Court of the United States, to the same effect, appears in the cases of *Boyd* v. *U. S.,* (1886) 116 U.S. 616; *Weeks* v. *U. S.,* (1914) 232 U.S. 383, L.R.A. 1915–B 834; *Silverthorne Lumber Co.* v. *U. S.,* (1920) 251 U.S. 385; *Gouled* v. *U. S.,* (1921) 255 U.S. 298; *Burdeau* v. *McDowell,* (1921) 256 U.S. 465; and finally *Amos* v. *U. S.,* (1921) 255 U.S. 313.

It should be stated here that in the case of *Gouled* v. *U. S.,* *supra,* it was held that the motion could be filed even in the course of the trial, if it is shown, or if it appears from the evidence, that the defendant learned at that very moment that said evidence was in the power of the district attorney or that the latter intended to present it against him. And in *Burdeau* v. *McDowell, supra,* the doctrine was limited in the sense of not making it applicable to those cases where the evidence is illegally obtained by a private individual, since the provision of the Fourth Amendment which prohibits unreasonable searches refers to acts executed by agents of the government and not by private individuals.

In California, which is the place of origin of Sections 517 and 518 invoked by the prosecuting attorney, we have not found any case where those sections have been applied. There exists in that State, on the contrary, a rule which only prevails in California and in very few States, which maintains that however illegally the evidence may have been obtained, if it is material to the case which is being tried,

said evidence is admissible against the defendant, the latter, of course, having a right to bring an action against the official who illegally obtained it. See the case of *People* v. *Mayen,* 188 Cal. 237, 24 A.L.R. 1385, 205 Pac. 435. This doctrine has been severely criticized in 8 Cal. Law Review 347.

From the remotest epochs, deep respect for the inviolability of the home has always been professed. To the Romans, the home of a citizen was a sacred sanctuary. In the Common Law, where it is said that the home of a person is his castle, the principle has very deep roots. In Spain, Section 215 of the Penal Code imposed severe penalties on the public official who not being a judicial authority and while the Constitutional guarantees were not suspended, entered the home of a Spanish citizen or a foreigner without his consent, if he did not comply with certain requisites decreed by the Constitution, and the penalty was doubled if he did not return to their owner immediately after the search, the papers and objects which he had seized. The violation of this right caused innumerable sufferings and humiliations to the inhabitants of the Thirteen Colonies and recalling them, they raised the principle to the category of a Constitutional provision immediately after adopting the Federal Constitution, inserting said principle in the Fourth Amendment and giving it preference in all the State Constitutions, as one of the attributes of a free man. In acknowledgment of the inestimable value of this right, the Supreme Court of the United States, in *Gouled* v. *U. S., supra,* and in the more recent case of *Grau* v. *U. S.,* (1932) 287 U.S. 124, has said that the Fourth Amendment must be liberally construed in order to protect the inviolability of the home against unreasonable searches.

Returning now to the California rule, to which we have referred, we are of the opinion that the logical consequence of this rule which permits that evidence illegally obtained be admissible at the trial, is to offer an incentive to unscrupulous officials to disregard the Constitutional provision each time that they wish to obtain incriminatory evidence against a

person or to obtain his conviction of a crime through evidence thus seized. Instead, if such evidence is rejected, not only are these abuses restrained, but the very decision of the court in rejecting the evidence, constitutes the best reprimand of the illegal conduct of the official.

In Puerto Rico, although the majority doctrine has been followed in the *Cerecedo* case, *supra,* in *People* v. *Osorio,* 34 P.R.R. 225, this Court deviated somewhat from the weight of authority when it held that a revolver, although illegally seized by a policeman, was admissible in evidence against the defendant; but the Court later realigned itself with the majority in the cases of *People* v. *Lebrón, supra,* and *People* v. *Santiago, supra.*

■ The prosecuting attorney also maintains that the incident concerning the illegal seizure of the evidence should not be included in the record on appeal, as this is a collateral question not involved in the main case.

The proceedings established by law in order to ascertain a civil right, for example that of *habeas corpus* for the purpose of ascertaining one's right not to be illegally deprived of his liberty, and the instant proceeding—for the purpose of obtaining the return of evidence seized in violation of the Constitutional guarantee aforementioned—and any other proceeding of the same sort, are all proceedings of a civil nature but when in this case that civil proceeding constitutes an incident within a criminal case, so intimately related to it that the latter cannot be decided without referring to the proceedings and evidence involved in said incident, the latter can and must be reviewed within the criminal case. In the instant case judgment could not be rendered on appeal without referring to the incident which we have discussed, since we must decide whether the evidence whose admission the defendant attacks, was or not correctly admitted; and in order to do that, we must determine beforehand whether or not it was obtained in violation of Section 2 of our Organic Act and of the insular statutes above cited. This is the

procedure which has been followed on appeal in all the cases which we have been able to examine, in the Puerto Rican decisions above cited as well as in the cases of *Weeks* v. *U. S., supra, Silverthorne Lumber Co.* v. *U. S., supra,* and *Amos* v. *U. S., supra.*

In the case at bar it does not appear that the defendant attacked the validity of the search warrant in the municipal court; but as we have said, that omission could not prevent him from raising said question in the district court, provided that he did that, as actually happened, before the date set for the trial.

After deciding thus the preliminary question, we shall now proceed to consider the merits of the appeal.

 The basic question involved in this case is the determination of whether the trial court erred or not in denying a motion filed by the defendants in which they requested that the search warrant be annulled and in admitting in evidence against their opposition, the objects which were taken from them.

The right of persons to be protected against illegal searches is guaranteed in Puerto Rico by Section 2 of our Organic Act which in its relevant part reads as follows:

"That the right to be secure against unreasonable searches and seizures shall not be violated.

"That no warrant for arrest or search shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

This question was also dealt with in Title XIII of the Code of Criminal Procedure under the heading "Of Search Warrants", and among the sections of which said Title consists, Sections 503, 504, 505 and 506 stand out, reading literally as follows:

"Section 503.—A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched.

"Section 504.—The justice of the peace must, before issuing the warrant, examine on oath the complainant, and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them.

"Section 505.—*The depositions must set forth the facts tending to establish the ground of the application, or probable cause for believing that they exist.*

"Section 506.—*If the justice of the peace is thereupon satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence,* he must issue a search warrant, signed by him with his name of office, to a peace officer in his district, commanding him forthwith to search the person or place named, for the property specified, and to bring it before the justice of the peace."

Let us now see what was the sworn statement (affidavit) by virtue of which the Municipal Judge of Mayagüez was *"satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence."*

The above mentioned statement reads as follows:

"Sworn statement of Oscar Correa and Antonio Fraticelli, I. P.

"On October 14, 1939, and in Mayagüez, Puerto Rico, there appeared before this court Oscar Correa and Antonio Fraticelli, both married and of age, residents of Mayagüez, Puerto Rico, and after being duly sworn, they state:

"That their names and other personal circumstances are as have been set out.

"That it has come to their knowledge directly and by confidences obtained from persons who can be believed, that Alberto Capriles and Ramón Ramírez, residing in Buena Vista Street, Ward Buenavista of Mayagüez, P. R., in their home which is a frame house, with a zinc ceiling without paint and with a porch in the style of a chalet and which is on the left side going from north to south, have there bolipool tickets, notebooks, lists of numbers, pencils, money, rubber bands and other utensils used for the operation and exploitation of a secret lottery known as bolipool, thereby violating Act No. 25, approved by the Legislature of Puerto Rico on July 17, 1935.

"For these reasons we request Your Honor to issue a search warrant for the purpose of searching said residence.

"All what we have said is the truth and nothing but the truth, and so we swear.

"(Sgd.) Oscar Correa, I. P.
"(Sgd.) Antonio Fraticelli.
"Sworn to and signed before me on the 14th of October, 1939.
"(Sgd.) A. Nazario Janer, Municipal Judge."

The affiants only asserted under oath "that it has come to their knowledge and by confidences obtained from persons who can be believed, that Alberto Capriles and Ramón Ramírez residing in . . . have bolipool tickets, notebooks, etc." Where are the facts set forth which enable the municipal judge to determine for himself whether there exists in effect a probable cause, without having to rely exclusively on the mere conclusion of the affiants? We have seen already that Section 505 of the Code of Criminal Procedure, *supra,* expressly requires that *"the depositions must set forth the facts* (not conclusions) tending to establish the ground of the application,'' and no fact is set forth in this deposition, but instead the mere conclusion of the affiants and the statement that they have received confidences which although believed entirely by them, could not be considered equally trustworthy by the municipal judge who did not even know the names of said informers.

In the case of *State* v. *District Court,* (Montana, 1921) 198 Pac. 362, an affidavit was brought before the court which in its relevant part reads as follows:

"R. B. Hayes, being first duly sworn, deposes and says: That he has probable cause to believe, and does believe, that on the 5th day of February, A. D. 1921, intoxicating liquors were, and have been ever since said date, and still are possessed, kept, and disposed of and unlawfully introduced into the state of Montana by the said defendant (relator) . . .''

The affidavit ended with a prayer that the court issue a search warrant.

Under a statute substantially the same as our's, the Supreme Court of Montana annulled the search warrant and in doing so, expressed itself as follows:

"Under this doctrine, *the facts upon which the application is made must be stated under oath, and the magistrate to whom it is presented must determine their sufficiency without reference to the opinion or belief of the applicant.* A warrant issued upon a conclusion of the applicant, without any facts stated in the application upon which the judicial officer to whom it is addressed may form his own conclusion, is not a showing of 'probable cause supported by oath or affirmation' within the meaning of the guaranty." (Italics supplied. Page 365.)

In the case of *State* v. *District Court*, (Montana, 1926) 244 Pac. 280, 284, it was held that the sworn statement must set forth facts sufficient to justify the issuance of a search warrant and that an affidavit which only sets forth conclusions is insufficient. It was also said that the rule is too well established in that State to be set aside. In the dissenting opinion delivered in that case, it is said that "probable cause is such a state of facts and circumstances as would lead a careful and conscientious man to believe the accused person guilty."

In the case of *U. S.* v. *Kelih*, 272 Fed. 484, it was held that: "Under Const. Amend. 4, providing that search warrants shall not be issued but upon probable cause, supported by oath or affirmation, the finding of probable cause from the exhibited facts or the legal conclusion justifying the warrant is a judicial function, and cannot be delegated by the judge to the accuser."

See to the same effect *Gore* v. *State*, (Okla.) 218 Pac. 545; *Taylor* v. *Commonwealth*, (Ky.) 249 S.W. 1035; *State* v. *Lock*, (Mo.) 259 S.W. 116; *State* v. *Baltes*, 198 N.W. 282; and *Smoot* v. *State*, (Ga.) 128 S.E. 909.

And finally a commentator of the acknowledged authority of Judge Cooley, in his work "Constitutional Limitations", (Sixth edition), at page 367, discusses this question in the following terms:

"For the service of criminal process, the houses of private parties are subject to be broken and entered under circumstances which are

fully explained in the works on criminal law, and need not be enumerated here. And there are also cases where search warrants are allowed to be issued, under which an officer may be protected in the like action. But as search warrants are a species of process exceedingly arbitrary in character, and which ought not to be resorted to except for very urgent and satisfactory reasons, the rules of law which pertain to them are of more than ordinary strictness; and if the party acting under them expects legal protection, it is essential that these rules be carefully observed.

"In the first place, they are only to be granted in the cases expressly authorized by law; and not generally in such cases until after a showing made before a judicial officer, under oath, that a crime has been committed, and that the party complaining has reasonable cause so suspect that the offender, or the property which was the subject of the ·instrument of the crime, is concealed in some specified house or place. And the law, in requiring a showing of reasonable cause for suspicion, intends that *evidence shall be given of such facts as shall satisfy the magistrate that the suspicion is well founded;* for the suspicion itself is no ground for the warrant *except as the facts justify it.*"

As the sworn statement which was filed in this case is insufficient, the search warrant issued by virtue of said statement is null and void, since it is not based on an affidavit which complies with the requirements of law; and said warrant being null and void, the evidence obtained through it is illegal, and the trial judge should have granted defendants' motion requesting that said evidence be returned to them, and should have denied its admission.

If we discard in this case the evidence obtained by means of the search warrant, there is not any evidence against the defendants.

As we have stated at the beginning of this opinion, the court *a quo* condemned the defendants to pay a fine of $200 or spend four months in jail.

Although this error has not been assigned nor discussed by the defense or by the prosecuting attorney, nor is it necessary to discuss it for the purposes of this opinion, in order to avoid erroneous constructions of the law in the future,

561

we deem it our duty to call the attention of the trial judge to Act No. 11 of April 8, 1916 (Code of Criminal Procedure, 1935 ed. page 230) which provides that when as in this case, the judgment consists of a fine or in case of failure to pay the fine, a term in jail, the latter can never exceed ninety days.

For these reasons, the judgment appealed from must be reversed and the appellant Alberto Capriles freely acquitted and the evidence which was illegally taken from him should be returned to him.