UNITED STATES v. ABRAMS et al.

(District Court, D. Vermont.  February 23, 1916.)

No. 294.

1. CRIMINAL LAW ⬤⇒393—EVIDENCE—ARTICLES WRONGFULLY OBTAINED FROM ACCUSED.

   Const. U. S. Amend. 4, provides that the right of the people to be secure against unreasonable searches and seizures shall not be violated. Amendment 5 provides that no person shall be compelled in any criminal case to be a witness against himself.  Relying upon a promise or threat by customs officers that it would be better for him if he gave them what they wanted, defendant permitted them to take and carry away from his place of business certain invoices, documents, and other papers.  *Held*, that the delivery of the papers under this promise or threat was involuntary in law, and the taking thereof was a violation of defendant's constitutional rights, and the papers were not admissible in evidence against him on a criminal trial.

   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 871–874; Dec. Dig. ⬤⇒393.]

2. SEARCHES AND SEIZURES ⬤⇒7—RETURN OF PAPERS TAKEN.

   The District Court has authority to order a return of papers in the possession of the district attorney and other officers of the court which have been obtained from a defendant by officers of the government while acting under color of their office.

   [Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5; Dec. Dig. ⬤⇒7.]

Criminal prosecution by the United States against Morris N. Abrams and another.  Heard on the petition of defendants to require the district attorney to deliver certain papers to them filed December 13, 1915, and amended petition filed January 27, 1916, and ex parte affidavits filed December 6, 1915, and February 2 and 17, 1916.  Petition granted.

See, also 230 Fed. 310.

Vernon A. Bullard, U. S. Atty., of Burlington, Vt.

Curie, Smith & Maxwell, of New York City (Thomas M. Lane, of New York City, of counsel), for defendants.

HOWE, District Judge.  [1] It fairly appears from the petitions and affidavits that Carl H. Chandler, a customs agent, and Jeremiah Dillon, a deputy collector, entered the defendants' place of business at New London, Conn., on or about the 24th of March, 1913, and informed the defendant Morris N. Abrams that they were such officers of the government; that Mr. Dillon then said to this defendant that it would be better for him if he gave Mr. Chandler what he wanted; that then Mr. Chandler, without any further conversation and without this defendant's consent, took from the defendants' desk a number of invoices, documents, and other papers, and carried them away, promising to return them after they were compared with the invoices entered at the Vermont custom house; that Mr. Dillon called at the defendants' place of business again, and this defendant, relying upon what was said to him at the time of the first visit, turned over to him 24 more invoices, to be forwarded to Mr. Chandler at Boston,

Mass., to be used and returned as the others were to be; that although nearly three years have elapsed, none of the papers have been returned in accordance with this promise, but that they have come into the hands and under the control of the United States district attorney; that this defendant surrendered none of the papers, except in response to and relying upon what Mr. Dillon said; that the papers have not only been used before a grand jury to obtain this indictment against the defendants, but are now retained by the district attorney to be used as evidence of crime against the defendants in the trial of this case; and that this defendant was not informed by the officers that his papers were being searched, seized, or obtained to be used as evidence against him.

Mr. Dillon told this defendant that it would be better for him if he gave Mr. Chandler what he wanted, and relying upon this promise or threat he allowed the officers to carry away his papers, although he used his best efforts on the first occasion to persuade the officers to allow him to retain a certain invoice of goods which had not been checked up at that time; but the most he was able to accomplish in this regard was to obtain a promise from them that they would send him a copy of the invoice (which they did) to use in checking up the goods therein described.

None of the papers were voluntarily delivered to the officers. They were all obtained by the promise or threat that it would be better for this defendant if he gave Mr. Chandler what he wanted. This promise or threat influenced this defendant to part with his papers, and makes their delivery involuntary in the eye of the law. Bram v. United States, 168 U. S. 532, at page 542, 18 Sup. Ct. 183, 42 L. Ed. 568. The delivery of these papers may well be likened to a confession, which is incompetent, because not voluntarily made. In Bram v. United States, supra, the court said at page 542 of 168 U. S., at page 187 of 18 Sup. Ct. (42 L. Ed. 568):

"In criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment to the Constitution of the United States, commanding that no person 'shall be compelled in any criminal case to be a witness against himself.'

"But a confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. * * * A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.

"A brief consideration of the reasons which gave rise to the adoption of the Fifth Amendment, of the wrongs which it was intended to prevent, and of the safeguards which it was its purpose unalterably to secure, will make it clear that the generic language of the amendment was but a crystallization of the doctrine as to confessions, well settled when the amendment was adopted, and, since expressed by the text-writers and expounded by the adjudications, and hence that the statements on the subject by the text-writers and adjudications but formulate the conceptions and commands of the amendment itself. In Boyd v. United States, 116 U. S. 616 [6 Sup. Ct. 524, 29 L. Ed. 746], attention was called to the intimate relation existing between the provision of the Fifth Amendment securing one accused against being compelled to tes-

tify against himself, and those of the Fourth Amendment protecting against unreasonable searches and seizures; and it was in that case demonstrated that both of these amendments contemplated perpetuating, in their full efficacy, by means of a constitutional provision, principles of humanity and civil liberty, which had been secured in the mother country only after years of struggle, so as to implant them in our institutions in the fullness of their integrity, free from the possibilities of future legislative change."

Thus it clearly appears that if, after Dillon had told this defendant that it would be better for him to give Chandler what he wanted, the defendant had made a declaration to Chandler, stating the contents of the papers, that such a declaration would not have been admissible in evidence against him because of the influence which had been used to obtain it. This would be a violation of the Fifth Amendment, as was held in Bram v. United States, supra. Do the same reasons and rules apply to obtaining from a defendant papers which contain evidence of crime as would apply in obtaining an oral admission of crime from him? The same reasons and rules should and do apply, and the fact that the evidence thus obtained is written makes no difference. The defendant's constitutional rights are as much violated in the one case as in the other. The taking of the papers from this defendant without his consent was also a seizure of them that was unreasonable and contrary to the spirit of the Fourth Amendment. United States v. Wong Quong Wong (D. C.) 94 Fed. 832; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834; Ann. Cas. 1915C, 1177.

[2] The right of this court to order a return of papers in the possession of the district attorney and other officers of the court, which have been obtained by officers of the government, while acting under color of their office, is fully recognized and established in Weeks v. United States, supra, and the opinion therein by Mr. Justice Day is exhaustive on this subject, and nothing appears to be necessary or proper here but to refer to and follow it.

Therefore the conclusion is that the papers in question were taken from the defendants by officials of the United States, acting under color of their office, in violation of the defendants' constitutional rights, and, having made a seasonable application for their return, an order will be made that the district attorney return them to the defendants forthwith.