**UNITED STATES v. KOZAN et al.**

District Court, E. D. New York. January 10, 1930.

Rehearing Denied February 13, 1930.

No. 25873.

**416**

■■■■■■■■■■■■■■■■■■■■■

Howard W. Ameli, U. S. Atty., and Herbert H. Kellogg, Asst. U. S. Atty., both of Brooklyn, N. Y. (Henry G. Singer, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Arthur A. Kestler, of Brooklyn, N. Y., for defendant Kozan.

BYERS, District Judge. Motion to restrain the United States Attorney from using upon the trial of an indictment found against the defendant any of the evidence obtained directly or indirectly as the result of an alleged unlawful and illegal search.

The evidence objected to consists apparently of the proposed testimony of Patrolman August H. Schupp, a police officer of the city of New York; three marked bottles, containing gin as to two, and colored alcohol as to one, all of the forbidden characteristics; and possibly other bottles of liquor.

The search occurred on July 6, 1929, in the rear part of a drug store conducted by the defendant at No. 153 Norman Avenue, Brooklyn, in the Eastern District of New York.

It is undisputed that, on the day in question, Patrolman Schupp entered the defendant's store, spoke to the latter, and endeavored to buy a pint of whisky. He was asked if he had a prescription, and, upon giving a negative answer, was informed by the defendant that no sale could be made.

The police officer withdrew, and, in a few moments, returned with his superior officer, and asked the defendant if he had any whisky on the premises; the defendant answered in the affirmative; the officer then asked if the defendant had a permit, and again received an affirmative answer, and the defendant exhibited that document.

The officer asked where the liquor was kept, and a closet was indicated to him by the defendant.

The patrolman then proceeded to examine the contents of the closet, and to check up the defendant's prescriptions for liquor, and to compare the supply of liquor on hand with the prescriptions, and to search the premises. The result of that visitation is what the defendant believes should be excluded from evidence at his trial.

The police officer has twice testified under oath that he did not observe or note any violation of law, before he made the search and seizure in question.

The government contends that the motion should be denied, first, because the defendant, being a mere licensee, cannot complain of an illegal search and seizure; second, that the police officer had the right to inspect the records of the defendant relating to the sale of intoxicating liquors; and, third, that, no matter how the evidence was obtained, the government may use it upon the trial.

These contentions will be examined in the order in which they are advanced.

The government relies upon the language of the permit, to sustain its first contention; so far as pertinent, it is as follows: "3. That the permittee keep the files and records pertaining to the business conducted under this permit, on the premises covered by the permit, and will make all reports required of him by law or regulation, and will, upon proper request, promptly allow and permit inspection to be made by any officer of the Bureau of Prohibition, of such files and records and of all the premises and property used for and in connection with any operations under this permit, including the stocks of intoxicating liquors on hand and all vehicles passing into or out of said premises."

To decide that a patrolman who is a member of the police department of the city of New York is an "officer of the Bureau of Prohibition" would result in transferring a municipal employee into an agent of the federal government without the act or sanction of the National Legislature, something that this court has not the power to do.

The government also urges that one holding a permit waives his constitutional rights against illegal search and seizure. No authority is cited to sustain the contention.

The suggestion is novel, that, by obtaining a permit under section 6 of title 2 of the National Prohibition Act (27 USCA § 16), one is relegated to an inferior type of citizenship, and, during the life of the permit, he is subject to a disability not shared by his fellow citizens. The plain aspect of the matter is that, by obtaining such a permit, the holder engages to abide by the law and regulations under which it is issued, and no special power is conferred upon any governmental agency, whether national, state, or municipal, nor could it be by the licensee, which is in excess of the powers lawfully confided to public officials.

The second contention is but a repetition, in another form, of what is urged under the first; as the police officer has twice

stated under oath that he did not observe or note any violations of law in the defendant's store on July 6, 1929, his subsequent activities were not sanctioned by law.

The third contention, that the evidence in question is available to the government, notwithstanding the manner in which it was procured, is at variance with the decision of the Supreme Court, in Gambino v. U. S., 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381.

The motion is granted; settle order on three days' notice.

### On Motion for Reargument.

This is a motion for reargument of a motion heretofore decided on January 10, 1930, granting the motion of the defendant Kozan to restrain the United States Attorney from using upon the trial of this case, as against the said defendant, any of the evidence obtained directly or indirectly as the result of an unlawful and illegal search and seizure.

Reargument is sought upon the contention that, in making its decision, the court inadvertently overlooked title 2, section 34, of the National Prohibition Act (27 U. S. C. § 51 [27 USCA § 51]) which reads as follows:

"Sec. 34. All records and reports kept or filed under the provisions of this Act shall be subject to inspection at any reasonable hour by the commissioner or any of his agents or by any public prosecutor or by any person designated by him, or by any peace officer in the state where the record is kept, and copies of such records and reports duly certified by the person with whom kept or filed may be introduced in evidence with like effect as the originals thereof, and verified copies of such records shall be furnished to the commissioner when called for."

It is true that the foregoing was neither relied upon by the government, nor sought to be avoided by the defendant, upon the argument or in the briefs of counsel, when the motion was first presented. Consequently it was not considered by the court.

The circumstances have already been stated in the opinion first rendered, and require amplification to the following extent:

At the hearing before the Commissioner, Patrolman Schupp, a police officer of the city of New York, being called as a witness for the government, testified concerning what occurred at the drug store of the defendant Kozan, on July 6, 1929, as follows:

"I entered premises 153 Norman Avenue. It is a three-story building. The first floor is occupied by a drug store. I went into the drug store and was approached by the defendant. I asked him for a pint of whisky, and he asked me for if I had a permit—I mean, if I had a prescription—and I said, 'No.' He said, 'I cannot sell you anything then.' I then went out, and I came in with another patrolman, and then I told him that I was a policeman, and I was going to make an inspection of his drug store. As I entered the prescription room—"

At this point in his testimony, the Commissioner asked the officer if he had any probable cause for search, and, upon receiving a reply in the negative, the case was dismissed on motion of the Assistant United States Attorney.

If the views herein to be expressed are sound, both the motion to dismiss and the granting thereof were proper; which is not intended as a criticism of the government's present effort to disaffirm the prompt action of its representative before the Commissioner.

There seem to be no reported decisions which discuss or decide the question of the bearing of section 34 of the National Prohibition Act (27 USCA § 51) upon the circumstances here disclosed.

For present purposes, it is to be observed that the government contends that Patrolman Schupp was a "peace officer in the state where the record is kept," and hence what he did on the occasion in question has the sanction of law.

In examining this argument, it will be recalled that the patrolman should be held to a reasonable observance of the law under which it is now claimed that he acted, for, of course, the law must be binding upon police officers, and even the United States government, as well as upon druggists and the rest of the community; or else our efforts for better than 150 years last past, to maintain domestic tranquillity, have been misguided.

Assuming, for the sake of argument, that Patrolman Schupp was a peace officer within the purview of this statute, and being lawfully in the store itself of the defendant, what special right did this statute confer upon him? Manifestly, the right to inspect the records of the defendant Kozan, which he was required by law to keep. Those records are specified in section 615 of Regulations 2, effective October 1, 1927, and consist of prompt detailed entries of all intoxicating liquors received and sold, the serial numbers of strip stamps, and the number of the case

containing liquors lawfully received; the details of each sale, and the serial number of each strip stamp used in connection therewith; and, if a sale is made upon a physician's prescription, the number thereof and the physician's name must be entered. The signing of blanks as required for these records and other details are therein prescribed.

Section 100 of the Regulations prescribes, among other things, that all records and files shall be kept on the premises described in the permit; and that all such records as are prescribed by regulation and as may be required by any state or federal law must be kept, and shall be accessible to the Commissioner or administrator, or any representative of the Bureau of Prohibition, "or by any peace officer of the state wherein such records are kept." (Query: Does the quoted language apply in the absence of any state law?)

Officer Schupp, therefore, standing in Kozan's drug store on July 6, 1929, at the most, had the right to inspect those records. If he had asked for them, Kozan would have had the right to invite the officer to be seated at the soda fountain, if there was one, or to stand on the floor or otherwise dispose himself in the store, while Kozan procured the records and presented them to the officer for his inspection. Whether the officer would have understood them, if that had been done, is beside the point.

That, however, was not what Schupp, under oath, says that he did. His testimony is that, failing to beguile Kozan into making a sale of whisky to him, "I then went out and came in with another patrolman, and then I told him that *I was a policeman, and I was going to make an inspection of his drug store. . As I entered the prescription room—*" The difference between inspecting the records, and inspecting the drug store and *entering the prescription room,* is the difference between complying with the law and violating it.

The invasion by the patrolman of the non-public part of the store, and *not* the inspection of the permittee's required records, clearly was the constabulary concept of a policeman's prerogative. It will be recalled that, as Schupp stood in the store itself, according to his own testimony, he had no cause to believe that the law was being violated. If the contrary had been his state of mind, it may be hoped, or even assumed, that he would have procured a search warrant, in order to prosecute legally a search of the premises.

Nothing that Schupp testified to, either before the Commissioner, or later before the hearer in revocation proceedings, indicates that he even knew what records Kozan was under duty to maintain; nor does he assert, upon either occasion, that he demanded the production of such records. It follows, therefore, that the motion to suppress evidence is now being resisted for a reason which is distinctly an afterthought; a reason not shown to have been in the mind of the policeman, and one of which he was probably unaware at the time when he announced the purpose of inspecting the store, and proceeded to invade that part of it to which the public had no right of access.

■ It is urged by the government that, because Kozan did not resist the entrance of the officer into the prescription room, he may not now complain of the illegal search and seizure. It is a critical decision for any citizen to make who desires to preserve simultaneously his physical integrity and his constitutional rights, when confronted by a police official who proclaims his forthwith visitation of the citizen's premises. The path of discretion is not even the subject of judicial agreement, in these perplexing circumstances. That which may be imputed to Kozan under the facts in this case may properly be characterized as acquiescence, which is a far cry from voluntary consent, U. S. v. Abrams (D. C.) 230 F. 313; U. S. v. Kelih (D. C.) 272 F. 484.

This argument, however, largely departs from the major theory of the government, which is, not that the conduct of the officer is to be condoned upon broad principles of lawful search and seizure and a possible waiver of right to urge that it was unlawful, but rather that the officer had the right to inspect the precise records which the defendant was obligated to keep. It has been assumed, but not decided, that this officer had the right to inspect such records, but the testimony clearly shows that he never sought to assert that right, or that it was denied him.

■ It results, therefore, that the government has not brought the patrolman's activities within the scope or purpose of section 34 of the National Prohibition Act (27 USCA § 51), and, consequently, the provisions of that statute, if otherwise applicable, cannot now be urged to justify the illegal search and seizure.

The disposition of the motion, in the light of what has been said, necessarily reserves for appropriate occasion, if such should be presented, consideration of the interesting question of whether a New York City police officer is "a peace officer in the state where the record is kept," in view of the lack of

enforcement legislation in this state; and whether the statute quoted was intended to render such an officer an assistant to the prohibition administrator at the election of the latter, and, if so, whether the administrator has declined such assistance, according to the language of the instant permit; and, lastly, whether the law, as quoted, was intended to confer upon municipal police officers a roving commission to act as auditors in checking up records required to be kept by druggists upon specified forms, in a specified way. These questions have been interestingly discussed in the briefs, but are not necessary to the decision of this motion.

The motion for reargument is denied.