**UNITED STATES of America,**
**Appellant,**

v.

**Ernest T. PAGE, Appellee.**

**No. 17404.**

United States Court of Appeals
Ninth Circuit.

April 18, 1962.

Cecil F. Poole, U. S. Atty., John Kaplan and James F. Hewitt, Asst. U. S. Attys., San Francisco, Cal., for appellant.

Robert H. Miller and Albert E. Polonsky, San Francisco, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, HAMLIN, JERTBERG, MERRILL, KOELSCH, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

The government appeals from the granting of a motion to suppress evidence, following the granting of a mistrial. (18 U.S.C. § 1404) Page was indicted for violating 21 U.S.C.A. § 174, and the motion was directed to certain narcotics found by government agents during a search of his home. The court below heard the motion upon Page's affidavit and upon the oral testimony of Page and of four of the agents. It then ruled that, as a matter of law, it was bound to grant the motion under the decision of this court in Channel v. United States, 1960, 9 Cir., 285 F.2d 217, and the cases therein cited, particularly Higgins v. United States, 1954, 93 U.S.App. D.C. 340, 209 F.2d 819. We ordered a hearing en banc to consider whether Channel should be overruled, as the government contends. We conclude that the order must be reversed, but that Channel should not be overruled.

The court below assumed, without deciding, "that the testimony of the government witnesses is to be accepted and the testimony of the defendant rejected". This being the nature of the ruling, we set forth the evidence in the light most favorable to the government.

At about 11:00 A.M., four narcotics agents arrived at Page's home in San Francisco. They had some reason to believe that he was engaged in the narcotics traffic, but not enough to constitute probable cause for his arrest, and they had neither a search warrant nor a warrant for his arrest. Two of the agents, Cain and Campbell, knew that Page had a dog, and refused to go into the house until the dog was in a place where it could not get at them. Another agent, Wilkins, rang Page's doorbell. Page answered; Wilkins identified himself as a narcotics agent, showed his badge, said he would like to talk to Page, and asked to come in; Page said "surely", and let Wilkins in. The fourth agent, Feldman, seeing Wilkins go in, opened an adjoining door and entered the garage, but made no search there.

Once inside, Wilkins asked Page to put his dog, a large German Shepherd, in the bathroom, saying that he had other agents with him and they were afraid of the dog. This was done. Cain and Campbell then entered and were greeted by Page. Wilkins let Feldman come in by way of steps leading into the house from the garage. One or more of the agents then told Page that they had reason to believe he was trafficking in narcotics. They asked him "if he minded if we looked around." Page denied that he was in the narcotics traffic, and said he had "nothing here", "nothing to hide", and that the agents were "welcome to look", "to go right ahead and search the whole place". Feldman told Page that he was not required to consent to a search, and Page said, "go ahead and search, I've nothing here". The search proceeded, and the narcotics in question were found. There was other evidence which, if believed, would support a finding that Page did not consent. We do not set it out because the court, in its ruling, assumed that such evidence should be rejected.

The question presented is, does the evidence, viewed most favorably to the government, require a decision, as a matter of law, that the search was illegal and therefore a violation of Page's rights under the Fourth Amendment to the United States Constitution? We are of

the opinion that it does not. The question is one of fact, for the trial court to resolve.

We have no reservations as to the importance of maintaining the protection afforded to the citizen by the Fourth Amendment. As the Supreme Court said in Gouled v. United States, 255 U.S. 298, at 304, 41 S.Ct. 261, at 263, 65 L.Ed. 647:

> "It has been repeatedly decided that these Amendments [the Fourth and Fifth] should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly overzealous executive officers."

See also Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461. There are dozens of pronouncements to the same effect.

Nevertheless, it has been long established that one can validly consent to a search, even though the consent be given while the defendant is in custody. (United States v. Mitchell, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; cf. Davis v. United States, 1946, 328 U.S. 582, 593, 66 S.Ct. 1256, 90 L.Ed. 1453; Zap v. United States, 1946, 328 U.S. 624, 628, 66 S.Ct. 1277, 90 L.Ed. 1477; cf. Bram v. United States, 168 U.S. 532, at pp. 549, 557, 558, 18 S.Ct. 183, 42 L.Ed. 568).

Whether such consent has been given is, in the first instance, a question of fact for the trial court. (See Rule 41(e), Rules of Criminal Procedure, 18 U.S.C.: "The judge shall receive evidence on any issue of fact necessary to the decision of the motion [to suppress]"; Crosby v.

United States, 5 Cir., 1956, 231 F.2d 679, 681; Patterson v. United States, 5 Cir., 1950, 183 F.2d 687, 689; Ford v. United States, 9 Cir., 1926, 10 F.2d 339, 346; Steele v. United States, 1925, 267 U.S. 505, 511, 45 S.Ct. 417, 69 L.Ed. 761; United States v. Mitchell, supra; cf. Gila Valley G. & N. Ry. Co. v. Hall, 232 U.S. 94, 103, 34 S.Ct. 229, 58 L.Ed. 521; Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Kovach v. United States, 6 Cir., 1931, 53 F.2d 639). In Marsh v. United States, 2 Cir., 1928, 29 F.2d 172, Judge Learned Hand stated the rule at p. 173:

> "The circumstances made the trooper's story somewhat doubtful, and an easy complaisance in any plausible tale may deprive defendants of their constitutional rights. This caution we are not, however, ourselves in a position to exercise, because, except in plain cases, we cannot tell from the cold record where the truth lies. For the future we take this occasion to press upon the District Judges that they search the testimony in such cases with care, remembering that the protection of defendants must in most cases rest finally with them."

Because of the importance of preserving constitutional rights, various rules have been stated for the guidance of the trial judge in determining whether consent to the search was in fact given. The government must prove that consent was given.[1] It must show that there was no duress or coercion, express or implied.[2] The consent must be "unequivocal and specific" and "freely and intelligently given".[3] There must be convincing evidence that defendant has waived his rights.[4] There must be clear and pos-

---

1. Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649, 651; Nelson v. United States, 1953, 93 U.S.App.D.C. 14, 208 F.2d 505; Kovach v. United States, 6 Cir., 1931, 53 F.2d 639.

2. Judd v. United States, supra, note 1; Nelson v. United States, supra, note 1.

3. Judd v. United States, supra, note 1; Nelson v. United States, supra, note 1; Kovach v. United States, supra, note 1.

4. Judd v. United States, supra, note 1; Nelson v. United States, supra, note 1; Catalanotte v. United States, 6 Cir., 1953, 208 F.2d 264; Gibson v. United States, 1945, 80 U.S.App.D.C. 81, 149 F.2d 381.

itive testimony.[5] " 'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights".[6] Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact.[7] The government's burden is greater where consent is claimed to have been given while the defendant is under arrest.[8]

It is still true, however, that it is the trial judge who hears the witnesses and who must pass upon their credibility. We sometimes tend to forget that the testimony of a witness, presented to us in a cold record, may make an impression upon us directly contrary to that which we would have received had we seen and heard that witness. It ought not to be assumed that United States District Judges are any less determined to preserve constitutional rights than we are. They, too, are sworn to uphold the Constitution. That they do, in fact, take seriously their obligations to protect the constitutional rights of defendants in cases such as this is demonstrated by the many reported opinions in which they have dealt with such questions, some of which we cite in the margin.[9]

Many decisions of the other Courts of Appeals sustain the trial court's finding that there was consent to a search, even though the consent was obtained under authority of the badge, or while defendant was under arrest.[10]

5. Judd v. United States, supra, note 1; Nelson v. United States, supra, note 1.

6. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.

7. Nelson v. United States, supra, note 1.

8. Judd v. United States, supra, note 1.

9. United States v. Abrams, D.C.Vt., 1916, 230 F. 313; In re Tri State Coal & Coke Co., D.C.W.D., Pa.1918, 253 F. 605; United States v. Marquette, D.C.N.D.Cal., 1920, 271 F. 120; United States v. Slusser, D.C.W.D.Ohio, 1921, 270 F. 818; United States v. Kelih, D.C.S.D.Ill., 1921, 272 F. 484; United States v. Lydecker, D.C.W.D.N.Y., 1921, 275 F. 976; United States v. Williams, D.C.Mont., 1924, 295 F. 219; In re Lobosco, D.C. E.D.Pa., 1926, 11 F.2d 892; United States v. Kozan, D.C.E.D.N.Y., 1930, 37 F.2d 415; United States v. Marra, D.C.N.D. N.Y., 1930, 40 F.2d 271; United States v. McCunn, D.C.S.D.N.Y., 1930, 40 F.2d 295; United States v. Baldocci, D.C.S.D. Cal., 1930, 42 F.2d 567; United States v. Ruffner, D.C.Md., 1931, 51 F.2d 579; United States v. Hoffenberg, D.C.E.D. N.Y., 1938, 24 F.Supp. 989; United States v. Novero, D.C.E.D.Mo., 1944, 58 F.Supp. 275; Application of Fried, D.C.S.D.N.Y., 1946, 68 F.Supp. 961; United States v. Alberti, D.C.S.D.N.Y., 1953, 120 F.Supp. 171; United States v. Minor, D.C.E.D. Okla., 1953, 117 F.Supp. 697; United States v. Guerrina, D.C.E.D.Pa., 1953, 112 F.Supp. 126; United States v. Reckis, D.C.Mass., 1954, 119 F.Supp. 687; United States v. Gross, D.C.S.D.N.Y., 1956, 137 F.Supp. 244; United States v. Ong Soon Sing, D.C.S.D.N.Y., 1957, 149 F. Supp. 267; United States v. Wallace, D.C.D.C., 1958, 160 F.Supp. 859; United States v. Martin, D.C.S.D.N.Y., 1959, 176 F.Supp. 262.

10. Dillon v. United States, 2 Cir., 1921, 279 F. 639; Marsh v. United States, 2 Cir., 1928, 29 F.2d 172; United States v. Bianco, 2 Cir., 1938, 96 F.2d 97; United States v. Adelman, 2 Cir., 1939, 107 F. 2d 497; In re Fried, 2 Cir., 1947, 161 F.2d 453; United States v. MacLeod, 7 Cir., 1953, 207 F.2d 853 (a case factually quite similar to the case at bar); United States v. Perez, 2 Cir., 1957, 242 F.2d 867; United States v. Dornblut, 2 Cir., 1958, 261 F.2d 949 (another case quite similar to ours); United States v. Burgos, 2 Cir., 1959, 269 F.2d 763; United States v. Sclafani, 2 Cir., 1959, 265 F. 2d 408; Anderson v. United States, 5 Cir., 1958, 255 F.2d 96; Gatterdam v. United States, 6 Cir., 1925, 5 F.2d 673; Windsor v. United States, 6 Cir., 1923, 286 F. 51; Schutte v. United States, 6 Cir., 1927, 21 F.2d 830; Kovach v. United States, 6 Cir., 1931, 53 F.2d 639; United States v. Ziemer, 7 Cir., 1961, 291 F.2d 100; Shores v. United States, 8 Cir., 1949, 174 F.2d 838; Honig v. United States, 8 Cir., 1953, 208 F.2d 916; cf. Bowles v. Beatrice Creamery Co., 10 Cir., 1944, 146 F.2d 774; Ruhl v. United States, 10 Cir., 1945, 148 F.2d 173; Thomas v. United States, 10 Cir., 1946, 154 F.2d 365; Brainard v. United States, 1955, 95 U.S.App.D.C. 121, 220 F.2d 384; Mallory v. United States, 1956, 98 U.S.App.D.C. 406, 236 F.2d 701.

This court has repeatedly sustained a finding that there was consent, under somewhat comparable circumstances. (Raine v. United States, 1924, 9 Cir., 299 F. 407; Giacolone v. United States, 1926, 9 Cir., 13 F.2d 110; Waxman v. United States, 1926, 9 Cir., 12 F.2d 775; Poetter v. United States, 1929, 9 Cir., 31 F.2d 438). In certain cases where there was much less evidence of consent than here, we have held against a finding of consent. (Herter v. United States, 1928, 9 Cir., 27 F.2d 521; Farris v. United States, 1928, 9 Cir., 24 F.2d 639). Other courts have also done so. (Ray v. United States, 5 Cir., 1936, 84 F.2d 654; Cofer v. United States, 5 Cir., 1930, 37 F.2d 677; Rigby v. United States, 1957, 101 U.S.App.D.C. 178, 247 F.2d 584; Waldron v. United States, 1955, 95 U.S.App.D.C. 66, 219 F.2d 37; Dukes v. United States, 4 Cir., 1921, 275 F. 142).

■■ In reviewing the trial court's determination, we apply the "clearly erroneous" rule, by analogy to Rule 52(a) F.R.Civ.P., 28 U.S.C., as elucidated in United States v. United States Gypsum Co., 1947, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746, as follows:

> "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

The Criminal Code (Title 18 U.S.C.) and the Federal Rules of Criminal Procedure are silent upon the question as to whether the "clearly erroneous" rule or the "substantial evidence" rule, applicable to jury trials, should be applied in a criminal case when we review a decision of the judge who has received conflicting evidence ·as to the admissibility of evidence. (As to the substantial evidence rule, see Blassingame v. United States, 9 Cir., 1958, 254 F.2d 309; United States v. Owen, 7 Cir., 1956, 231 F.2d 831; United States v. Tutino, 2 Cir., 1959, 269 F.2d 488, 491). We choose the "clearly erroneous" rule.

■ Rule 26, F.R.Crim.Proc. provides: "The admissibility of evidence * * * shall be governed * * * by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Rule 57(b) provides: "If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or· with any applicable statute". We think that these rules leave us free to choose. Generally, although not invariably, the same rules govern the admissibility of evidence in both civil and criminal trials. Moreover, the important constitutional rights here involved make the "clearly erroneous" rule, which does not circumscribe our authority so narrowly, peculiarly appropriate. We applied that rule in Gilbert v. United States, 9 Cir., 1961, 291 F.2d 586, 588, note 3. (See also Lowrey v. United States, 8 Cir., 1947, 161 F.2d 30, 34; United States v. Abel, 2 Cir., 1958, 258 F.2d 485, affirmed, 362 U.S. 217, 984, 80 S.Ct. 683, 4 L.Ed. 2d 668).

Channel v. United States, supra, 9 Cir., 285 F.2d 217, 1960, is the case relied upon by Page, and the case which the judge felt bound to follow. There are substantial factual differences between this case and Channel. There, Federal narcotics agents, displaying firearms, arrested Channel in a Los Angeles parking lot at 11:00 A.M. He was handcuffed, taken to the Bureau office, and questioned. Two of the agents testified, in substance, that while Channel was being questioned, he said that he had no narcotics in his apartment and that the agents were welcome to go there and search it. They also said that Channel told them from whom to get the keys which they used to effect entrance. Channel's testimony was to the contrary. The court below found that the consent was genuine. This court reversed, relying upon Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649

and Higgins v. United States, 93 U.S. App.D.C. 340, 209 F.2d 819. It distinguished United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; United States v. MacLeod, 7 Cir., 207 F.2d 853, and Ruhl v. United States, 10 Cir., 148 F.2d 173.

■ Channel stands for nothing more than the application of the "clearly erroneous" rule to the facts before the court in that case. It does not purport to lay down any rule of law to the effect that a consent to a search obtained "under authority of the badge" is necessarily an unreal consent. Nor does it disregard the special weight to be given to the determination of the trial judge when he is called upon to determine the credibility of witnesses whom he has seen and heard but we have not. We construe the decisions cited in Channel as standing for no more than Channel stands for, and we express no opinion as to whether we would decide each of them the same way. Each case necessarily depends upon its own facts. The mere fact that a particular panel of this court may feel that another panel, in a prior decision, was mistaken in holding that a finding was "clearly erroneous" is not a basis for convening the court in bank and overruling the prior decision.

■ In the present case, the court did not exercise its fact-finding functions; rather it, in effect, sustained a "demurrer to the evidence". In this it erred. However, nothing in this opinion is to be taken as any indication that we think that the court should find either that there was or that there was not consent in this case. We only hold that it is for the court to make such determination as it deems appropriate, either upon the record as now made or upon taking further testimony.if it desires to do so.

We conclude that the question before the court below was one of fact, not one of law. The order is reversed, and the trial court is directed to take such further proceedings upon the motion as are not inconsistent with this opinion.