**UNITED STATES of America, Plaintiff,**

v.

**Charles Joseph MODERACKI, Defendant.**

**Crim. A. No. 1826.**

United States District Court
D. Delaware.

Feb. 13, 1968.

L. Vincent Ramunno, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Stanley C. Lowicki, of O'Donnell, Hughes & Lowicki, Wilmington, Del., for defendant.

## OPINION

LAYTON, District Judge.

The defendant, Charles Joseph Moderacki, was charged on May 5, 1967, in a three count Information, with violations of Title 18 U.S.C. §§ 7, 13, and 1303. Defendant moved to dismiss the Information and to suppress evidence seized. A hearing was held, and from the evidence presented by the United States and on behalf of the defendant, the Court finds the following facts:

(1) Just prior to 12:20 P. M., January 20, 1967, Postal Inspectors Kohl and Lanctote observed the defendant in the United States Post Office in Wilmington, Delaware, acting in a manner giving

cause for reasonable belief that he was violating certain federal laws.

(2) About 12:20 P. M., January 20, 1967, the inspectors approached the defendant on the floor of the mail room of the Wilmington, Delaware, Post Office and asked him if he would go upstairs with them to the Postal Inspectors' Office, which he agreed to do.

(3) On arrival in the Postal Inspectors' Office, Inspector Kohl handed the defendant a "WARNING AND WAIVER" form, which purports to advise all persons who are about to be interrogated of their Fifth Amendment rights against self-incrimination under the circumstances.

(4) Defendant read the form and was then asked to read it out loud, which he did.

(5) Inspector Kohl went over the form once again with the defendant.

(6) Defendant said that he understood his rights and that he did not want a lawyer.

(7) The inspectors then asked the defendant if he "would mind" emptying his pockets, which he proceeded to do. From his pockets the defendant produced a copy of the MORNING TELEGRAPH, a newspaper which reports race track information, $590 in cash and 4 slips of paper. At this point, the inspectors did not warn the defendant that he need not reveal the contents of his pockets or that if he did so, the contents could be used as evidence against him in a Court.

## MOTION TO SUPPRESS

There is no question that the defendant was fairly and adequately warned of his Constitutional rights as laid down in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant, however, moves to suppress the contents of his pockets on two grounds. First, the defendant urges that the production of the material in his pockets at the "request" of the inspectors was not voluntary. Second, he argues that the search was unlawful be-

cause it was not incident to a valid prior arrest.

■ It is, of course, elementary that the fruits of an unlawful search are not admissible in evidence against the defendant. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Silverthorne Lumber Company v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319.

### Voluntariness Of The Search

■ The United States' primary contention is that the search was lawful because the defendant knowingly and freely emptied his pockets, thereby waiving his rights under the Fourth Amendment. Concededly, a defendant may waive his Fourth Amendment rights against searches of his property or person. As said by Judge Steel in United States v. Elmer William Enderlein (Del., January 27, 1964, unreported):

"* * * But the intention to waive the right must be demonstrated by clear and positive testimony. Rigby v. United States, [101 U.S.App.D.C. 178,] 247 F.2d 584 (1957); United States v. Page, 302 F.2d 81 at 83 (9th Cir. 1962); Schaffer v. Anderson, [224 F.Supp. 184] (D.Del., 1963); Judd v. United States, [89 U.S.App.D.C. 64,] 190 F.2d 649 (Cir., 1951) at 651. It has been said that the consent must be unequivocal and specific (United States v. Page, supra.; Karwicki v. United States, 55 F.2d 225, 226 (4th Cir., 1932), and freely and intelligently given. United States v. Smith, 308 F.2d 657, 663 (C.A. 2, 1962), certiorari denied, 372 U.S. 906, [83 S.Ct. 717, 9 L.Ed.2d 716] (1962); Kovach v. United States, 53 F.2d 639 (6th Cir., 1931); Judd v. United States, supra., 651. The courts indulge every reasonable presumption against the waiver of a constitutional right. United States v. Page, supra; Rigby v. United States, supra."

■ However, whether a subject, otherwise fully warned of his Miranda rights, who has apparently permitted a search of his person, without a further

warning that he need not submit to the search and that anything found may be used against him as evidence has voluntarily and knowingly waived his Fourth Amendment rights is still an open question. In fact, as recently as December 1, 1967, the United States Court of Military Appeals expressed three divergent views on this very point. United States v. Pershing (U.S. Ct. of Military App., December 1, 1967).

Two cases, United States v. Nickrash, 367 F.2d 740 (C.A. 7, 1967) and United States v. Blalock, 255 F.Supp. 268 (E.D. Pa., 1966), have held that the additional warning is required prior to the search. To the contrary are two state court opinions, State v. Forney, 181 Neb. 757, 150 N.W.2d 915 (1966) and State v. McCarty, 199 Kan. 116, 427 P.2d 616 (1967), and a ruling of the Court of Appeals for the First Circuit, Gorman v. United States, 380 F.2d 158 (C.A. 1, 1967).

The rationale underlying Gorman is that a warning to a suspect that he does not have to make any statement and, if he does, anything he says may be used against him as evidence is tantamount to a warning that he does not have to submit to a search and, if he does, anything found may be used against him.

"But that things which might be found in a search could be used against an accused seems implicit in the warning of the right to remain silent * * *." Gorman v. United States, supra, at page 164.

While this argument carries some persuasion, I adhere to the result reached in Nickrash and Blalock. The key to a voluntary waiver is whether it was done knowingly. An inference that a person has been warned is not one and the same thing as an actual warning. The rule of waiver is not intended so much for the protection of the cool, hardened, criminal as for the slow-witted offender and

perhaps, on occasion, the innocent person caught in a web of circumstances who becomes frightened or confused. The former, but not necessarily the latter, might suspect that the Miranda-type warning is equally applicable to a search.

■ It is obviously repetitive, and may even seem slightly ridiculous, for an officer, having once given the Miranda warning before taking a suspect's statement, to have to repeat relatively the same warning before searching his person. But only in this fashion can it be known beyond doubt that the suspect, in emptying his pockets, has done so with a full knowledge of what he is doing. Lacking an explicit warning as to his rights under the Fourth Amendment, it can never be known with certainty whether a defendant voluntarily waived those rights.[1] Accordingly, the search was unlawful insofar as it rests upon the defendant's waiver of his rights.

*The Validity Of The Search As Incident To The Prior Arrest*

Having rejected the Government's primary contention, that the defendant voluntarily produced the contents of his pockets, the alternative contention, much less stressed at the argument and in the briefs, will now be considered.

There was no search warrant although one could have been easily and swiftly secured as the search occurred in the Federal Building in Wilmington, Delaware, which houses the offices of a United States Commissioner and three United States District Court Judges, each authorized to issue search warrants (18 U.S.C. § 3102), and the offices of the United States Marshal and the Federal Bureau of Investigation, who are empowered to execute search warrants (18 U.S.C. § 3106 and § 3107, respectively). Notwithstanding the availability of a warrant, the United States urges that the search was lawful as incident to a valid

---

[1] It is not too difficult to postulate a case in which the defendant had full knowledge of his rights, though he was not expressly warned at the time of the search. In such a case, clear and convincing proof of his knowledge might suffice to establish that the waiver was freely and knowingly made. There is no such evidence, however, in this case.

arrest.[2] The defendant argues that Postal Inspectors have no power to arrest and, therefore, the search was not lawful.

■ It is established beyond question that a search can be validated by an arrest only when the arrest was antecedent, valid itself, and the search was "incident to" the arrest. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Coplon, 185 F.2d 629 (C.A. 2, 1950). There is no problem in this case regarding the requirement that the arrest be prior to the search or that the search be "incident to" the arrest. The sole contention here is that the arrest was not valid.

■■ The validity of an arrest by a federal official is tested by federal statutory law and in the absence of controlling federal law, by the law of the state in which the arrest was made. United States v. Di Re, supra., United States v. Viale, 312 F.2d 595 (C.A. 2, 1963). Where there is no affirmative statutory power to arrest without a warrant, Congress has not granted the power. This conclusion follows almost a fortiori from the fact that no Act of Congress establishes a general federal rule for arrests without a warrant (United States v. Di Re, supra, p. 591, 68 S.Ct. p. 222) and by the fact that when Congress wanted to grant the power to make arrests without a warrant, it did so expressly (see 18 U.S.C. § 3050, 18 U.S.C. § 3052 and compare 18 U.S.C. § 3056 before 1965 with the section as amended in 1965). The Act defining the powers of Postal Inspectors, 39 U.S.C. § 3523, neither authorizes nor proscribes arrests without a warrant. The validity of the arrest here, then, must be determined under the law of Delaware, the state in which the arrest was made.

Under Delaware law, an arrest without a warrant is lawful where 1) made by a private citizen for crimes committed in his presence which amount to or threaten a breach of the peace (State v. Hodgson, 200 A.2d 567 (Del.Superior Ct., 1964)) and 2) made by a "peace officer" who had probable cause to believe that a felony had been committed or in whose presence a misdemeanor was committed (11 Del.C. § 1906).[3]

■ The United States concedes that in the instant case there could be no citizen's arrest as the alleged offenses did not amount to nor threaten a breach of the peace. Thus, the arrest would be valid only if the Postal Inspectors were "peace officers" under Delaware law. Delaware law defines a "peace officer" as "any public official authorized to make arrests in a criminal case." 11 Del.C. § 1901.[4] Two questions are presented by the definition just quoted: (1) Are Postal Inspectors "public officials" within the meaning of § 1901? (2) Are Postal Inspectors authorized to make arrests in criminal cases?

Research has not disclosed any Delaware case that construed the phrase "public officials" as used in § 1901 to include federal officials, and the language of the section in no way suggests such a construction. Moreover, there are indications that the phrase applies exclusively to Delaware public officials. In State v. Hodgson, supra, the State conceded that out-of-state police officers were not "peace officers" within the meaning of § 1901. Similarly, the limited power conferred on out-of-state police crossing into Delaware in "hot-pursuit" (in which

2. For the purposes of this argument the government concedes that the Postal Inspectors' detention of the defendant was an arrest. However, the concession is only made for this limited purpose, without prejudice to the government's contention that the defendant produced the contents of his pockets voluntarily.

3. The offenses charged in the information are misdemeanors. However, there is no question that the alleged offenses were committed in the presence of the Postal Inspectors.

4. On the question of whether Delaware law or federal law governs the meaning of the phrase "peace officer" cf. United States v. Viale, supra, p. 599; United States v. Hou Wan Lee, 264 F.Supp. 804 (S.D.N.Y., 1967), p. 807.

case the officer must believe that the person committed a felony, 11 Del.C. § 1932) indicates that the legislature was not freely conveying "peace officer" status on all "public officials", no matter the source of their authority. Given this narrower reading of § 1901, which this Court adopts, Postal Inspectors are not "peace officers" under Delaware law. The arrest of the defendant, then, is not valid when tested by Delaware law.

Even if the Postal Inspectors would come within the scope of § 1901, there is still serious question whether the arrest here would be valid. The defendant urges that Postal Inspectors have no arrest power at all. If this were the case, then the inspectors could not be "peace officers" as defined by § 1901. The United States argues that Postal Inspectors have the power to arrest by virtue of Title 39 U.S.C. § 3523(a) (2) (K), which provides:

"In any criminal investigation, [the Postal Inspector] develops evidence, locates witnesses and suspects; apprehends and effects arrests of postal offenders, presents facts to the United States attorney, and collaborates as required with Federal and State prosecutors in presentation before United States Commissioner, grand jury and trial court."

An argument can be made that "apprehends and effects arrests" means "to make arrests." If this were what was intended, why the curious language, "apprehends and effects arrests?" There is the connotation here that the duty of the inspector is to locate the offender, detain him when necessary and summon someone to arrest him. By contrast, officers of the Federal Bureau of Investigation, the Secret Service and the United States Customs Service are granted the power to arrest in no uncertain terms. Title 18 U.S.C. § 3052, which defines the powers of the F.B.I., uses this unequivocal language:

"The * * * inspectors and agents of the Federal Bureau of Investiga-

tion of the Department of Justice *may serve warrants* and subpoenas issued under the authority of the United States and * * * *make arrests* without a warrant for any offense against the United States, * * *." (Emphasis added.)

The grant of power to the Secret Service is equally clear:

"Subject to the direction of the Secretary of the Treasury, the United States Secret Service, Treasury Department, is authorized to * * * detect and *arrest* any person committing any offense against the laws of the United States relating to coins * * * detect and *arrest* any person violating any of the provisions of sections 508, 509, and 871 of this title * * *. In the performance of their duties under this section, the Chief, Deputy Chief, Assistant Chief, inspectors and agents of the Secret Service are *authorized to make arrests* without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States * * *." 18 U.S.C. § 3056. (Emphasis added.)

*Similarly definite is* Title 19 U.S.C. § 1581(f) dealing with the duties of the United States Customs Officers:

"It shall be the duty of the several officers of the customs * * * *to arrest* any person who shall become liable to arrest, by virtue of any law respecting the revenue * * *." (Emphasis added.)

The ambiguity of the language used in 39 U.S.C. § 3523, "apprehends and effects arrests", has led two courts to the conclusion that Postal Inspectors are not authorized to make arrests. United States v. Helbock, 76 F.Supp. 985 (D. Ore., 1948) ; Ward v. United States, 316 F.2d 113 (C.A. 9, 1963). This Court is inclined to the same conclusion, with the caveat that the statute does not proscribe arrests by Postal Inspectors—it simply

does not authorize them.[5]  Thus, Postal Inspectors would not be "peace officers" within the meaning of § 1901 of Title 11 of the Delaware Code, even if the statute were more broadly construed as to the scope of the phrase "public official."

Having determined that the search of the defendant was unlawful, either as a voluntary search or as an incidental search, the defendant's motion for the return of the material seized and for its suppression for use as evidence is granted.

## MOTION TO DISMISS

Defendant's motion to dismiss the Information is based upon allegations that the Information is defective in that it contains duplicitous counts, it is vague, and it exposes the defendant to double punishment.  Having considered the points raised by the defendant and the authorities cited, the motion is denied as being without merit.

Submit Order.

---

5. The distinction made in the caveat is significant in that had Congress proscribed arrests by Postal Inspectors, there would indeed be "controlling federal law" and any reference to state law under United States v. Di Re, supra., would be unwarranted.